[No. D042152. Fourth Dist., Div. One. Apr. 28, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKY LASHA TAYLOR, Defendant and Appellant.

16

**COUNSEL**

Irma Castillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Melissa A. Mandel and Daniel Rogers, Deputy Attorneys General; and Kristen Chenelia for Plaintiff and Respondent.

**OPINION**

**AARON, J.**—Ricky Lasha Taylor appeals from his convictions for willful infliction of corporal injury on a cohabitant (Pen. Code,[1] § 273.5, subd. (a)), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), and battery with serious bodily injury (§ 243, subd. (d)). He contends: (1) the section 273.5 conviction must be reversed because there was insufficient evidence to prove cohabitation; and (2) the trial court erred in imposing a five-year sentence enhancement for Taylor's prior serious felony convictions pursuant to section 667, subdivision (a)(1). We conclude that the five-year prior serious felony sentence enhancement must be stricken, because the jury specifically found that Taylor did not inflict great bodily injury in the commission of the charged offenses, and there is no other basis for a finding that Taylor's current offenses are serious felonies, as required by section 667, subdivision (a)(1). In all other respects, we affirm the judgment.

---

[1] Unless otherwise specified, all statutory references are to the Penal Code.

I

FACTUAL AND PROCEDURAL BACKGROUND

Ricky Taylor was Cherise Coe's boyfriend. In July 2002, Taylor and Coe had been dating for about five months. Coe was 10 weeks pregnant with Taylor's child. Coe was homeless and living with Taylor in his car. According to Coe, "I had been staying in Vista with my aunt like for a little while, and then I would leave and I didn't have anywhere to stay, and then I would meet up with [Taylor], and then I would just be with him for a while." When Coe and Taylor were not living together in his car, he lived with his sister.

On the night of July 17, 2002, Taylor and Coe slept in Taylor's car at the beach. The next afternoon, Taylor gave two female friends a ride home in his car. Coe was sitting in the front passenger seat and the other two women were in the backseat. Taylor and Coe got into an argument. Taylor stopped the car several times, punched Coe in the face, and burned her face with a cigarette. Coe switched seats with one of the women in back. Taylor drove the other two women to their house, where they got out of the car. Taylor punched Coe in the face and back, grabbed her by the hair, and bit her on the right leg and stomach. Taylor stopped attacking Coe when a man approached with his dog. Coe got out of the car. Taylor followed her, then got back in his car and left.

When the police arrived at the scene, Coe was crying hysterically. She told the police that Taylor had punched her in the face, bitten her, and burned her with a cigarette. The police took Coe to the hospital. Coe had a swollen left eye and cheek, a burn mark between her nose and lip, bite marks on her leg and stomach, and abrasions and contusions on the left side of her face.

Coe suffered a fracture of the bone around her left eye. There was a small crack in the bone, but the bone was not displaced. According to the treating physician, such a fracture would normally heal itself without treatment. The doctor characterized the fracture "as a moderate to severe fracture, only because it is involving the head and it's very close to the eye." There was no injury to the eye itself.

At trial, Coe testified that her facial injuries were caused during a fight she had with two women, who had hit her in the face. She admitted that she and Taylor had a physical altercation in his car, but denied that he had punched her in the face. According to Coe, Taylor accidentally burned her with a cigarette during the fight. Taylor also bit her on the stomach and leg. Coe denied telling the police that Taylor had punched her in the face.

The jury convicted Taylor of willful infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)), assault by means of force likely to produce

great bodily injury (§ 245, subd. (a)(1)), and battery with serious bodily injury (§ 243, subd. (d)). However, the jury found not true allegations that Taylor had personally inflicted great bodily injury on Coe in the commission of the charged offenses. (§ 12022.7, subds. (a), (e).) Taylor admitted that he had suffered two prior serious felony robbery convictions, as charged in the information. (§§ 667, subds. (a)(1), (b)–(i), 1170.12.)

At sentencing, the trial court struck one of Taylor's strike priors. The court imposed a total prison term of 16 years 8 months, including a consecutive five-year enhancement for Taylor's serious felony priors pursuant to section 667, subdivision (a)(1).

## II

## DISCUSSION

### A. *There Was Sufficient Evidence of Cohabitation to Support the Conviction for Violating Section 273.5, Subdivision (a)*

The jury convicted Taylor in count one of corporal injury on a cohabitant, in violation of section 273.5, subdivision (a). This statute provides in relevant part that any person who willfully inflicts corporal injury on a "cohabitant" resulting in a traumatic condition is guilty of a felony. Taylor contends the evidence is insufficient to support a finding that he and Coe were cohabitants. We disagree.

In determining the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

The term "cohabitant" has been interpreted "broadly" to refer to those " 'living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy.' " (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1333 [52 Cal.Rptr.2d 256], quoting *People v. Holifield* (1988) 205 Cal.App.3d 993, 1000 [252 Cal.Rptr. 729].) "The element of 'permanence' in the definition refers only to the underlying 'substantial relationship,' not to the actual living arrangement." (*People v. Moore, supra,*

44 Cal.App.4th at p. 1334.) Permanence does not require exclusivity in either the relationship or the living arrangement. (*Id.* at pp. 1334–1335 [52 Cal.Rptr.2d 256].) "[F]or purposes of criminal liability under section 273.5, a defendant may cohabit simultaneously with two or more people at different locations, during the same time frame, if he maintains substantial ongoing relationships with each and lives with each for significant periods." (*People v. Moore, supra,* at p. 1335.)

Coe testified that she had been dating Taylor for five months, and that they were "living together" in his car at the time of the charged offenses. Coe was 10 weeks pregnant with Taylor's child. Coe did not want to be pregnant, but Taylor wanted her to keep the child. Coe loved Taylor. According to Coe, she lived with Taylor in his car "for a while" after having stayed with her aunt in Vista. Coe's testimony suggested that she had lived with Taylor for periods of time when she was homeless and had no other place to stay. Coe and Taylor spent the night before the charged crimes in Taylor's car at the beach.

Taken in their totality, these facts were sufficient to establish that Coe and Taylor were living together in a substantial relationship that was characterized by permanence and sexual or amorous intimacy. (*People v. Moore, supra,* 44 Cal.App.4th at p. 1333.) Although the couple's living arrangements may have been unstable or transitory, this did not deprive them of the statutory protection of section 273.5. Nothing in the language of the statute excludes cohabitants who do not have a permanent residence. The fact that Coe and Taylor sometimes lived separately with other relatives similarly does not preclude a finding that they were cohabitants at the time of the charged offenses. (*People v. Moore, supra,* at p. 1335; see also *People v. Ballard* (1988) 203 Cal.App.3d 311, 314 [249 Cal.Rptr. 806] [defendant lived with girlfriend but also had his own apartment].) We conclude that there was sufficient evidence of cohabitation to support the conviction for violating section 273.5, subdivision (a).

### B. *The Section 667, Subdivision (a)(1) Sentence Enhancement Must Be Stricken*

Taylor contends that the trial court erred in imposing a five-year sentence enhancement for his serious felony priors, pursuant to section 667, subdivision (a)(1).[2] He argues that section 667, subdivision (a)(1) is inapplicable because his current offenses are not serious felonies. (§ 1192.7, subd. (c).) We

---

[2] Section 667, subdivision (a)(1) provides in relevant part: "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." The trial court here imposed only a single five-year

conclude that the current offenses are not serious felonies, because the jury specifically found that Taylor did not personally inflict great bodily injury, and there is no other basis for treating the crimes as serious felonies. We further conclude that the trial court violated Taylor's statutory and constitutional rights to jury trial by treating the jury's finding of "serious bodily injury" as legally equivalent to a finding of "great bodily injury" despite the jury's express finding that Taylor did not inflict "great bodily injury."

1. *Proceedings Relating to the Allegations of Personal Infliction of Great Bodily Injury and Battery with Serious Bodily Injury*

The information charged Taylor with three separate sentence enhancements for personally inflicting "great bodily injury" on Coe, in violation of section 12022.7, subdivisions (a) and (e).[3] Count three separately charged that Taylor had committed the substantive crime of battery resulting in "serious bodily injury," in violation of section 243, subdivision (d). The information further alleged that Taylor had two robbery convictions stemming from a single 1983 case. These prior robberies were charged as strike priors under sections 667, subdivisions (b)–(i) and 1170.12, and as a five-year serious felony prior under section 667, subdivision (a)(1).

At defense counsel's request, the trial court bifurcated the trial of the substantive offenses from the trial of the charged priors, so that the jury would not hear about the priors in deciding Taylor's guilt as to the charged offenses.

In the instructions to the jury, the trial court gave the standard CALJIC instruction (CALJIC No. 17.20) defining the elements of a section 12022.7 enhancement for personal infliction of great bodily injury. This instruction defined "great bodily injury" as follows: " 'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury."

The trial court also gave the standard CALJIC instruction (CALJIC No. 9.12) on the charged crime of battery with serious bodily injury. (§ 243, subd. (d).) This instruction defined "serious bodily injury" as follows: "The

---

enhancement, because Taylor's two serious felony robbery priors were not brought and tried separately.

[3] Section 12022.7, subdivision (a) provides a three-year sentence enhancement for any person who "personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony . . . ." Subdivision (e) provides a three, four, or five-year sentence enhancement for any person who "personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony . . . ."

term 'serious bodily injury' means a serious impairment of physical condition, including but not limited to the following: loss of consciousness, concussion, bone fracture, protracted loss or impairment of bodily function or the function of any bodily member or organ, or a wound requiring extensive suturing or serious disfigurement."

In closing argument, the prosecutor argued that Coe's bone fracture constituted "great bodily injury" within the definition of CALJIC No. 17.20 because it was a "significant or substantial injury." She also argued that the bone fracture constituted "serious bodily injury" within the definition of CALJIC No. 9.12. The prosecutor told the jury that there was a "slight distinction between serious bodily injury and great bodily injury" because the former was expressly defined to include a bone fracture. The prosecutor stated: "We've got a bone fracture. It qualifies as serious bodily injury, and it's basically, given to you right there."

Defense counsel argued to the jury that Coe's bone fracture did not constitute "great bodily injury" because it was only a "moderate injury" within the meaning of CALJIC No. 17.20. However, defense counsel did not respond to the prosecutor's argument that the bone fracture constituted "serious bodily injury" under the definition set forth in CALJIC No. 9.12.

During jury deliberations, the jury submitted the following note to the court: "Can we have an expanded definition of 'great bodily injury' and 'serious bodily injury'? [¶] Does the law define a simple fracture as a 'great bodily injury' or a 'moderate injury'?" The court responded by stating that it could not provide more specific definitions of the terms. The court referred the jury to the instructions already given and told the jury: "Which side of these lines the injuries in this case fall is a matter for your judgment based on the evidence."

After further deliberations, the jury found not true all three of the charged section 12022.7 enhancements for personal infliction of great bodily injury. The jury specifically found that Taylor "did not personally inflict great bodily injury upon Cherise Coe" within the meaning of section 12022.7. However, the jury convicted Taylor of the substantive crime of battery with "serious bodily injury" as charged in count three.

While the jury was deliberating, Taylor waived his right to a jury trial on the truth of the charged prior convictions. After the jury returned its verdict, Taylor also waived his right to a court trial on the issue and admitted that he had suffered the prior convictions alleged in the information. Taylor also admitted that his prior robbery convictions were serious felonies. Based on Taylor's admission, the court found true the charged priors.

At sentencing, defense counsel argued that the five-year term enhancement for serious felony priors could not be imposed because none of the *current* offenses qualified as a serious felony, as required by section 667, subdivision (a)(1). Defense counsel noted that the jury had specifically rejected the great bodily injury allegations charged in the information. Defense counsel argued that the current offenses thus did not qualify as serious felonies under section 1192.7, subdivision (c)(8), which defines serious felonies to include "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ." The prosecutor argued that the jury's finding of "serious bodily injury" as an element of count three was legally equivalent to a finding of great bodily injury.

The trial court ruled that Taylor's conviction for battery with serious bodily injury (§ 243, subd. (d)) qualified as a serious felony. Accordingly, the court imposed a five-year enhancement for the serious felony priors pursuant to section 667, subdivision (a)(1).

### 2. On the Particular Facts of This Case, the Trial Court Erred in Treating Taylor's Conviction for Battery with Serious Bodily Injury as Equivalent to a Finding of Great Bodily Injury

Respondent contends that Taylor's conviction for battery with serious bodily injury (§ 243, subd. (d)) qualifies as a serious felony under section 1192.7, subdivision (c)(8). According to respondent, battery with serious bodily injury is a serious felony under subdivision (c)(8), because serious bodily injury is legally equivalent to great bodily injury. (*People v. Moore* (1992) 10 Cal.App.4th 1868, 1870–1872 [13 Cal.Rptr.2d 713].) Invoking the general rule that inconsistent verdicts provide no basis for reversal, respondent argues that we must treat the conviction for battery with serious bodily injury as a serious felony, despite the fact that the jury specifically found that Taylor did not personally inflict great bodily injury in the commission of the charged offenses. We disagree.

■ Section 667, subdivision (a)(1) provides a five-year sentence enhancement for serious felony priors. The statute applies only if the current conviction itself is also a serious felony. Serious felonies are defined in section 1192.7, subdivision (c). "Section 1192.7, subdivision (c), lists some felonies that are per se serious felonies, such as murder, mayhem, rape, arson, robbery, kidnapping, and carjacking." (*People v. Kelii* (1999) 21 Cal.4th 452, 456 [87 Cal.Rptr.2d 674, 981 P.2d 518].) If the current conviction falls within this group of crimes, "then the question whether that conviction qualifies as a serious felony is entirely legal." (*Ibid.*) It is undisputed that none of Taylor's current convictions fall within this group of serious felonies. Specifically, battery with serious bodily injury (§ 243, subd. (d)) is not one of the

enumerated crimes that qualify as per se serious felonies. (*People v. Moore, supra,* 10 Cal.App.4th at p. 1871.)

Section 1192.7, subdivision (c), defines other crimes as serious felonies by reference "to conduct rather than to a specific crime." (*People v. Reed* (1996) 13 Cal.4th 217, 223 [52 Cal.Rptr.2d 106, 914 P.2d 184]; see *People v. Murphy* (2001) 25 Cal.4th 136, 145 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) For example, the statute defines serious felonies to include "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm" (§ 1192.7, subd. (c)(8)), or "any felony in which the defendant personally used a dangerous or deadly weapon" (§ 1192.7, subd. (c)(23)).

Under these conduct-based definitions, a felony that does not qualify as a serious felony as a matter of law may be found to constitute a serious felony if the prosecution properly pleads and proves the facts necessary to establish the defined conduct. (*People v. Equarte* (1986) 42 Cal.3d 456, 465 [229 Cal.Rptr. 116, 722 P.2d 890].) The prosecution may satisfy this burden by pleading and proving a separate sentence enhancement that has the same factual elements as the defined serious felony conduct (*ibid.*), such as an enhancement for personally inflicting great bodily injury (§ 12022.7), personally using a firearm (§§ 12022.5, 12022.53), or personally using a deadly or dangerous weapon (§ 12022, subd. (b)(1)). If such a sentence enhancement is not alleged, the accusatory pleading must somehow give the defendant actual notice of the factual basis for the allegation that the charged offense is a serious felony. (*People v. Flynn* (1995) 31 Cal.App.4th 1387, 1393–1394 & fn. 4 [37 Cal.Rptr.2d 765].)

In this case, the information charged Taylor with three separate enhancements for personally inflicting great bodily injury. (§ 12022.7.) The jury found these allegations to be not true. Respondent nevertheless contends that the conviction for battery with serious bodily injury is legally equivalent to a finding of great bodily injury, and that the jury's findings are thus inconsistent. As respondent points out, we must give full effect to each of the jury's verdicts, even if they are inconsistent. (§ 954.) "[A]n inherently inconsistent verdict is allowed to stand; if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both. [Citations.]" (*People v. Santamaria* (1994) 8 Cal.4th 903, 911 [35 Cal.Rptr.2d 624, 884 P.2d 81]; accord *People v. Sanchez* (2001) 26 Cal.4th 834, 853, fn. 11 [111 Cal.Rptr.2d 129, 29 P.3d 209].)

It is settled that courts must make every effort to interpret a jury's verdict as being consistent. (*Mesecher v. County of San Diego* (1992) 9

Cal.App.4th 1677, 1685 [12 Cal.Rptr.2d 279].) A jury's findings will be treated as inconsistent only if they are clearly antagonistic and absolutely irreconcilable with each other under any rational view of the evidence. (*Lowen v. Finnila* (1940) 15 Cal.2d 502, 504 [102 P.2d 520].) Based on a careful review of the record, we conclude that the jury's findings are not inconsistent with one another. In the particular circumstances of this case, the conviction for battery with serious bodily injury is not legally or factually equivalent to a finding of great bodily injury.

■ Although the terms "great bodily injury" and "serious bodily injury" have been described as being "essentially equivalent" (*People v. Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894]) or having "substantially the same meaning" (*People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [19 Cal.Rptr.2d 434], citing *People v. Kent* (1979) 96 Cal.App.3d 130, 136 [158 Cal.Rptr. 35]), they have separate and distinct statutory definitions. Serious bodily injury is defined as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; *bone fracture*; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4), italics added.) By contrast, great bodily injury is defined as "a significant or substantial physical injury." (§ 12022.7, subd. (f).) Unlike serious bodily injury, the statutory definition of great bodily injury does not include a list of qualifying injuries and makes no specific reference to bone fractures.

The trial court gave the jury the standard CALJIC instructions on serious bodily injury and great bodily injury. (CALJIC No. 9.12 [defining serious bodily injury]; CALJIC No. 17.20 [defining great bodily injury].) These instructions provided different definitions for the two terms, based on their distinct statutory definitions. Nothing in the instructions given stated that serious bodily injury and great bodily injury are legally equivalent concepts. CALJIC No. 9.12 expressly defined serious bodily injury to include a bone fracture, whereas CALJIC No. 17.20 contained no similar language. Conversely, CALJIC No. 17.20 expressly excluded "[m]inor, trivial or moderate injuries" from the definition of great bodily injury, whereas CALJIC No. 9.12 contained no such language pertaining to serious bodily injury.

Based on the instructions given, the prosecutor argued to the jury that the victim's bone fracture constituted serious bodily injury as a matter of law. Defense counsel did not respond to the prosecutor's argument regarding serious bodily injury. However, defense counsel did argue that the fracture did not constitute great bodily injury, because it was only a moderate injury. The jury apparently agreed with both of these arguments, finding that Taylor had inflicted serious bodily injury, but not great bodily injury.

The record further indicates that this was a considered decision by the jury. During deliberations, the jury specifically asked whether a simple bone fracture is considered "great bodily injury" or only "moderate injury." The trial court properly responded by stating that this was a factual question for the jury to decide, and referred the jury to the instructions already given. (See *People v. Nava* (1989) 207 Cal.App.3d 1490, 1496–1498 [255 Cal.Rptr. 903] [disapproving jury instruction stating that bone fracture constitutes "significant and substantial physical injury" as a matter of law]; *People v. Beltran* (1989) 210 Cal.App.3d 1295, 1305–1306 [258 Cal.Rptr. 884] [same].) The jury's question indicates that it had focused on the precise issue argued by defense counsel: whether the victim's bone fracture was sufficiently serious to constitute anything more than a "moderate" injury within the meaning of CALJIC No. 17.20. (See *People v. Thompkins* (1987) 195 Cal.App.3d 244, 250 [240 Cal.Rptr. 516] [jury's request for clarification indicates "that the jury has focused on what it believes are the critical issues in the case"].)

In these circumstances, the jury's finding of serious bodily injury cannot be deemed equivalent to a finding of great bodily injury. The jury conscientiously applied the instructions given and decided that the victim's bone fracture did not constitute great bodily injury because it was only a "moderate" injury within the meaning of CALJIC No. 17.20. This is a factual determination that is reserved for the jury. (*People v. Nava, supra,* 207 Cal.App.3d at pp. 1496–1498.) In its verdicts, the jury distinguished between great bodily injury and serious bodily injury, because only the latter was defined to include a bone fracture, as the prosecutor herself noted in closing argument. Thus, the jury's finding that the bone fracture fell within the definition of serious bodily injury was not equivalent to a finding of great bodily injury.[4]

Our conclusion is not altered by the decision in *People v. Moore, supra,* 10 Cal.App.4th 1868. In *Moore,* the defendant's current offenses were attempted murder and robbery. The jury found that he had personally used a firearm and personally inflicted great bodily injury in the commission of the charged offenses. There was no dispute that Moore's current offenses were serious

---

[4] To the extent there is any arguable legal inconsistency in the jury's verdicts, it is primarily a result of the fact that CALJIC No. 9.12 and the closing arguments may have misled the jury by erroneously suggesting that *any* bone fracture constitutes serious bodily injury, no matter how minor. As we explained in *People v. Nava, supra,* 207 Cal.App.3d 1490, not every bone fracture constitutes serious or great bodily injury as a matter of law. The statutory definition of serious bodily injury lists bone fractures as one example of a "serious impairment of physical condition." (§ 243, subd. (f)(4).) Viewed in context, the reference to bone fractures does not mean "that every bone fracture is serious bodily injury but merely that it *can be* if it results in a serious impairment of physical condition." (*People v. Nava, supra,* 207 Cal.App.3d at pp. 1497–1498, italics added.) CALJIC No. 9.12 and the closing arguments arguably did not make this point sufficiently clear to the jury. We need not decide this question, however, because it has not been raised by Taylor in this appeal.

felonies. The only issue on appeal was whether the trial court had properly found that Moore's *prior* conviction for battery with serious bodily injury (§ 243, subd. (d)) also qualified as a serious felony. On this issue, the reviewing court found that "the element of 'serious bodily injury,' as required for felony battery, is essentially equivalent to or synonymous with 'great bodily injury' for the purpose of a 'serious felony' sentence enhancement pursuant to Penal Code sections 667, subdivisions (a) and (d), and 1192.7, subdivision (c)(8)." (*People v. Moore, supra,* at p. 1871.) The court further concluded that the trial court "properly went behind the minimum elements of the offense and considered the entire record of the conviction in determining the validity of the prior serious felony conviction allegation." (*Ibid.,* citing *People v. Guerrero* (1988) 44 Cal.3d 343, 348–356 [243 Cal.Rptr. 688, 748 P.2d 1150].)

*Moore* is distinguishable from this case on several grounds. First and foremost, the record of Moore's battery prior did not include any finding that he had *not* inflicted great bodily injury in committing the prior offense. The trial court's conclusion that the prior offense was a serious felony thus did not conflict with the express findings of the trier of fact. In the absence of any contrary indication in the record, the trial court in *Moore* was justified in applying the usual assumption that "great bodily injury" and "serious bodily injury" are "essentially equivalent." (*People v. Moore, supra,* 10 Cal.App.4th at p. 1871.)

In this case, in contrast, the trial court gave the jury different legal definitions of the terms great bodily injury and serious bodily injury. The lawyers distinguished between the two concepts in their closing arguments, and the jury itself distinguished between them in finding that Taylor had inflicted serious bodily injury, but not great bodily injury. The jury was never told that these terms had the same meaning. In these circumstances, we cannot apply the usual assumption that the two terms have essentially the same meaning.

Second, the issue in *Moore* was whether a *prior* conviction qualified as a serious felony conviction, not whether the current conviction did. Whether a prior conviction qualifies as a serious felony has been treated as a question of law for the court to determine. (*People v. Kelii, supra,* 21 Cal.4th 452.) The rationale for this rule is that the determination is made solely based on the record of conviction, no witnesses testify about the facts of the prior crimes, and the trier of fact considers only court documents. (*Id.* at pp. 456–457.) Under this reasoning, the trial court in *Moore* was permitted to consider the

entire record of conviction and make a legal determination as to whether the battery prior constituted a serious felony.[5]

In this case, by contrast, the issue before the trial court was whether Taylor's conduct in committing the *current* offenses made them serious felonies, and specifically, whether he had personally inflicted great bodily injury on the victim of the charged offenses. As we have noted, this was a question of fact for the jury to decide based on the evidence presented at trial. (*People v. Nava, supra,* 207 Cal.App.3d at pp. 1496–1498.)

■ Where the charging document alleges facts that would make the charged crime a serious felony—such as personal infliction of great bodily injury—"the question whether or not the defendant committed a serious felony as alleged shall be tried by the court or jury which tries the issue upon the plea of not guilty." (§ 969f.) This statute "requires that an allegation of specific facts that would make the current offense a serious felony must be tried to the same factfinder which tries the substantive offense . . . ." (*People v. Yarbrough* (1997) 57 Cal.App.4th 469, 477 [67 Cal.Rptr.2d 227].) ■ Because the jury here specifically found that Taylor had not inflicted great bodily injury, and its finding of serious bodily injury was not equivalent to a finding of great bodily injury, the trial court was not at liberty to make what amounted to a legal determination that Taylor had in fact inflicted great bodily injury. We conclude that the trial court's erroneous legal determination violated Taylor's statutory right to jury trial as to the factual basis for a serious felony finding under section 969f.[6]

---

[5] But see *People v. McGee* (2004) 115 Cal.App.4th 819, 823 [9 Cal.Rptr.3d 586] (holding under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] "a criminal defendant has a federal constitutional right to a jury trial on factual issues relating to the circumstances and conduct underlying a prior conviction used to enhance punishment"), petition for review filed March 19, 2004, S0123474. As of the filing of this opinion, petitions for review and a request for depublication were still pending in *McGee*■

[6] Taylor did not give up his right to have the jury make this factual determination by waiving his right to jury trial as to the truth of the charged priors. (See *People v. Equarte, supra,* 42 Cal.3d at p. 467 [finding such a waiver]; *People v. Yarbrough, supra,* 57 Cal.App.4th at pp. 477–478 [same]; see also *People v. Flynn, supra,* 31 Cal.App.4th at p. 1391 [following *Equarte*].) Taylor waived his right to jury trial as to the truth of the prior convictions while the jury was deliberating his guilt of the charged offenses, including the allegations that he had personally inflicted great bodily injury. (§ 12022.7.) There is no indication that Taylor knowingly or intentionally waived his right to jury trial on issues the jury was already considering at the time of his waiver. The language of Taylor's jury waiver was limited to the truth of the prior convictions, and did not extend to the factual basis for a finding that the charged offenses constituted serious felonies. Further, the trial court itself did not treat the waiver as encompassing this issue. The trial court did not purport to be making its own factual finding that Taylor had inflicted great bodily injury; it merely concluded that the conviction for battery with serious bodily injury was equivalent to a jury finding of great bodily injury.

3. *The Trial Court's Erroneous Finding That Taylor's Current Conviction for Battery with Serious Bodily Injury Was a Serious Felony Violated Taylor's Constitutional Right to Jury Trial on the Factual Basis for Imposing a Sentence Enhancement*

■ We requested supplemental briefing for the parties to address whether the trial court violated Taylor's constitutional right to jury trial by treating the jury's finding of "serious bodily injury" as legally equivalent to a finding of "great bodily injury" within the meaning of section 1192.7, subdivision (c)(8). We conclude that Taylor had a federal constitutional right to a jury determination of the factual predicate for a finding that any of the charged offenses was a serious felony. Because the jury specifically found that Taylor had not inflicted great bodily injury in the commission of the charged offenses, and there was no other factual or legal basis for a finding that any of the charged offenses was a serious felony, the trial court's determination that count three constituted a serious felony violated Taylor's constitutional right to jury trial.

In *Apprendi v. New Jersey, supra,* 530 U.S. 466 (*Apprendi*), the United States Supreme Court invalidated a New Jersey statute that allowed the imposition of a sentence enhancement where the trial judge, not the jury, found by a preponderance of the evidence that the charged crime was motivated by racial bias. The court reviewed the history of the right to jury trial and the requirement of proof beyond a reasonable doubt, noting the "historic link between verdict and judgment" and "the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (*Id.* at pp. 482–483.) The Supreme Court concluded: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

By its terms, the holding of *Apprendi* does not apply to "the fact of a prior conviction . . . ." (*Apprendi, supra,* 530 U.S. at p. 490.) The Supreme Court based this exception on its prior decision in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*), in which the court held that a judge could impose a greater term if the defendant had prior aggravated felony convictions, even if they were not charged in the indictment. Although *Apprendi* did not overrule *Almendarez-Torres*, it stated that *Almendarez-Torres* was arguably "incorrectly decided" (*Apprendi, supra,* 530 U.S. at p. 489), and it characterized *Almendarez-Torres* as "at best an exceptional departure from the historical practice that we have described." (*Apprendi, supra,* at p. 487.)

The *Apprendi* court explained that *Almendarez-Torres* was based on two factors that mitigated the need for a jury trial and for proof beyond a reasonable doubt: (1) Almendarez-Torres had admitted the prior convictions; and (2) the "fact" of a prior conviction necessarily carries with it substantial procedural safeguards. (*Apprendi, supra,* 530 U.S. at p. 488.) In both *Apprendi* and *Almendarez-Torres*, the court emphasized that the fact of a prior conviction " 'does not relate to the commission of the offense.' " (*Apprendi, supra,* 530 U.S. at pp. 488, 496, quoting *Almendarez-Torres, supra,* 523 U.S. at p. 244; see also *People v. Thomas* (2001) 91 Cal.App.4th 212, 223 [110 Cal.Rptr.2d 571] ["*Almendarez-Torres* does not require full due process treatment of an issue of recidivism which enhances a sentence *and is unrelated to an element of a crime*" (italics added)].)

The serious felony nature of Taylor's *current* offenses does not fall within the narrow *Almendarez-Torres* exception to *Apprendi*. Like New Jersey's "biased purpose inquiry" at issue in *Apprendi*, the question whether Taylor personally inflicted great bodily injury on the victim of the charged offenses "goes precisely to what happened in the 'commission of the offense[s].' " (*Apprendi, supra,* 530 U.S. at p. 496.) Taylor never admitted having personally inflicted great bodily injury so as to render any of the charged offenses a serious felony. Unlike the mere fact of a prior conviction, this is not a matter that was previously adjudicated in a proceeding carrying substantial procedural safeguards. Further, a finding that Taylor personally inflicted great bodily injury qualified Taylor for the imposition of a five-year sentence enhancement under section 667, subdivision (a)(1), and thus subjected him to a penalty exceeding the maximum he would have faced without such a finding. Under *Apprendi*, "any fact that increases the penalty for a crime beyond the statutory maximum prescribed for that crime must be submitted to a jury and proved beyond a reasonable doubt." (*In re Varnell* (2003) 30 Cal.4th 1132, 1141–1142 [135 Cal.Rptr.2d 619, 70 P.3d 1037].) We therefore conclude that Taylor had a federal constitutional right to jury trial as to the factual predicate for a finding that the charged offense constituted a serious felony within the meaning of section 667, subdivision (a)(1).

We emphasize that our holding does not preclude a trial court from making a purely legal determination that the jury's verdict constitutes a conviction of a serious felony in appropriate circumstances. For instance, a trial court can determine as a matter of law that a conviction for murder is a per se serious felony. (§ 1192.7, subd. (c)(1).) Similarly, the trial court can determine that a jury's true finding on a section 12022.7 enhancement for personal infliction of great bodily injury renders the charged offense a serious felony as a matter of law. (§ 1192.7, subd. (c)(8).) If the jury's verdict makes the charged offense a serious felony as a matter of law, it is not necessary that the jury actually proclaim the offense to be a serious felony.

 Under *Apprendi*, however, a criminal defendant has a right to jury trial as to any *factual* issue that must be resolved in order to determine whether the charged offense is a serious felony for the purpose of imposing a sentence enhancement under section 667, subdivision (a)(1). In the absence of a waiver of the right to jury trial as to this question, the trial court is bound by the jury's factual findings in determining the truth of a charged enhancement under section 667 subdivision (a)(1). More specifically, in deciding whether the charged offense is a serious felony, the trial court cannot make additional factual findings—or factual findings inconsistent with the jury's findings—pertaining to the defendant's conduct in the commission of the charged offense.

 In this case, whether the charged offenses qualified as serious felonies turned on a factual question: Did Taylor personally inflict great bodily injury in committing the charged offenses? Despite the jury's findings that he did not, the trial court concluded that the jury had made the requisite finding by convicting Taylor of battery with serious bodily injury. As a result, the trial court effectively substituted its own erroneous legal determination for the express factual findings of the jury. The right to jury trial "includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277 [124 L.Ed.2d 182, 113 S.Ct. 2078].) No matter how overwhelming the evidence, a judge in a criminal case may not direct a verdict for the prosecution. (*Ibid.*) The United States Constitution "requires an actual jury finding of guilty." (*Id.* at p. 280.) "[T]he jury's determination of ultimate guilt *is* indispensable." (*United States v. Gaudin* (1995) 515 U.S. 506, 510, fn. 2 [132 L.Ed.2d 444, 115 S.Ct. 2310].) Thus, the trial court violated Taylor's constitutional right to jury trial by incorrectly treating the conviction for battery with serious bodily injury as equivalent to a finding of great bodily injury. "[T]he error in such a case is that the wrong entity judged the defendant guilty." (*Rose v. Clark* (1986) 478 U.S. 570, 578 [92 L.Ed.2d 460, 106 S.Ct. 3101].)

III

CONCLUSION

There was sufficient evidence of cohabitation to support Taylor's conviction for infliction of corporal injury on a cohabitant. (§ 273.5, subd. (a).) The five-year sentence enhancement for Taylor's prior serious felony convictions must be stricken, because Taylor's current offenses are not serious felonies, as required by section 667, subdivision (a)(1).

IV

DISPOSITION

The five-year sentence enhancement imposed pursuant to section 667, subdivision (a)(1) is stricken. In all other respects, the judgment is affirmed. The trial court is directed to issue a new abstract of judgment consistent with this disposition.

Benke, Acting P. J., and McDonald, J., concurred.