Filed 8/29/13  P. v. Macias CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047599 |
| v. | (Super. Ct. No. 11CF1979) |
| AURELIO MACIAS, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed in part and reversed in part with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Kristine A. Gutierrez, Felicity Senoski, and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury convicted defendant Aurelio Macias, Jr., of active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a); all further statutory references are to this code; count 2) and possession of a controlled substance (count 3).  In a separate bench trial, the court found true allegations that defendant's prior convictions in 2004 for first degree burglary, carjacking, and active participation in a gang, in 2000 for carrying a loaded firearm, and in 2001 for residential burglary in Kansas were serious and violent prior convictions (§§ 667, subds. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A)), that he had had served prior prison terms for the 2004 and 2001 convictions (§ 667.5, subd. (b)), and that all three prior convictions were serious felonies (§ 667, subd. (a)).  After striking four of defendant's prior strike convictions, the court sentenced defendant to a total of 17 years and 8 months, consisting of 32 months (double the low term) for count 2, a concurrent 32 months (double the low term) for count 3, which it then stayed, and three consecutive 5-year terms for the three prior serious felonies (§ 667, subd. (a)(1)); it also imposed then struck two 1-year terms under section 667.5, subdivision (b).

Defendant contends his conviction on count 2 should be reversed because the evidence is insufficient to support it.  We agree and thus need not discuss his claim the court erred in instructing the jury on active participation in a criminal street gang.  Because defendant's remaining conviction for possession of a controlled substance does not qualify as a serious felony under section 1192.7, the three 5-year terms for the prior serious felony enhancements are ordered stricken.  In all other respects, the judgment is affirmed.

FACTS

After a traffic stop during which police recovered a baggie of methamphetamine, detective Diego Gomez went to defendant's apartment as part of his investigation.  Defendant opened the door when Gomez knocked but he tried to close it

2

when Gomez's partner identified him by name. Gomez grabbed defendant by the shirt and passed him off to his partner.

Gomez then saw Miguel Velasquez, aka Mousey, an active member of Los Crooks criminal street gang, walking from the living room toward the bedroom. While Gomez's partner was handcuffing defendant, Gomez jumped a sofa and grabbed Velasquez before he reached the bedroom. Defendant managed to slip his left hand out of the handcuffs because he was "sweating profusely," and ran outside. He did not make it far and was detained. In addition to the heavy sweating, Gomez noted defendant also spoke rapidly and had "a thick coat of an off-white substance around his mouth and tongue."

Defendant informed Gomez the single bedroom apartment was his. Upon searching the bedroom, Gomez found defendant's wallet and miscellaneous documents with his name and gang indicia or graffiti belonging to the Los Crooks and Eastside Santa Ana criminal street gangs. One of the gang writings referenced "Tweety," defendant's gang moniker. Under the bed covers, Gomez discovered a glass pipe containing an off-white crystal-like substance, which was later determined to be .02 grams of methamphetamine, a useable amount. A duffel bag in the bedroom contained women's clothing, numerous plastic baggies similar to the one found on the woman during the earlier traffic stop, and a digital scale. Also in the bedroom were two prescription pill bottles for Lacy Martinez and Levy Etney. A search of the living room revealed a toiletry bag with mail addressed to Velasquez, a knife, "a meth pipe," and a tablet of the drug "ecstasy."

At trial, defendant stipulated he was an active member of the Los Crooks criminal street gang, that he knew members of the gang engaged in a pattern of criminal activity, and that the substance in the pipe was a usable quantity of methamphetamine. Testifying as a gang expert, Gomez explained gangs often sell drugs and use the money to purchase firearms, make deposits in gang members' prison bank accounts, and provide

loans to gang members. According to Gomez, gang members often know when other gang members have drugs available to them. In 2011 when defendant was arrested, the most common drug used by Los Crooks gang members was methamphetamine.

DISCUSSION

*1. Sufficiency of the Evidence for Active Gang Participation*

To be convicted of street terrorism, a defendant must actively participate in a criminal street gang, have knowledge of the gang's pattern of criminal activity, and willfully commit an act that "promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (§ 186.22, subd. (a).) Having stipulated to the first two elements, defendant challenges only the third based on *People v. Rodriguez* (2012) 55 Cal.4th 1125, which held: "The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Id*. at p. 1132.)

Defendant contends his conviction under this statute must be reversed because there is no evidence he possessed a "controlled substance [count 2] with any other gang members" or for anyone's benefit but his own. We agree. Defendant was the only one who appeared to be under the influence of drugs, with his profuse sweating and the off-white substance around his mouth and on his tongue. There was no similar evidence presented as to Velasquez. That, combined with the evidence the drugs were found under the bed covers during a surprise search of defendant's apartment suggests he was concealing the drugs from Velasquez rather than sharing them with him.

The Attorney General maintains the jury could have reasonably concluded defendant possessed the drugs along with Velasquez, whose bag included "a pipe to smoke methamphetamine." She also argues Gomez testified other gang members know when fellow gang members have drugs, and in 2011 methamphetamine was the most

4

common drug used by Los Crooks gang members. From that, along with the fact Velasquez fled toward the bedroom when police arrived, she asserts it can reasonably be inferred Velasquez was at defendant's apartment to obtain methamphetamine and was trying to conceal it from police. But this is pure speculation given the absence of evidence Velasquez had any possessory interest in or resided at the apartment, knew the pipe was in the bedroom, or owned anything in the bedroom. Nor was there evidence Velasquez was under the influence or had been actively using methamphetamine when the police arrived or that the .02 grams of methamphetamine found in defendant's bedroom was sufficient for two individuals to share. And, contrary to the Attorney General's claim, the fact Velasquez walked toward the bedroom when police entered is insufficient to infer he was attempting to reach the methamphetamine because he had knowledge of and control over it since that was the only direction he could go from the living room to get away from the officers when they entered through the front door. Under these circumstances we cannot conclude the crime of possessing methamphetamine was committed by at least two gang members. Defendant's conviction on count 2 for active participation in a criminal street gang is reversed.

*2. Instructional Error and Serious Felony Enhancements*

Given our reversal of count 2, we need not discuss defendant's claim of instructional error on gang participation. And because defendant's only other conviction for possessing a controlled substance is not included within the list of serious felonies under section 1192.7, subdivision (c), the three 5-year serious felony enhancements under section 667, subdivision (a)(1) enhancements, including the one involving the Kansas conviction for burglary, are also reversed. (*People v. Taylor* (2004) 118 Cal.App.4th 11, 22 [section 667, subdivision (a)(1) "applies only if the current conviction itself is also a serious felony. Serious felonies are defined in section 1192.7, subdivision (c)"].) Accordingly, it is unnecessary to address defendant's claim his prior conviction in

5

Kansas for burglary did not constitute a prior serious felony and thus the five-year enhancement under section 667, subdivision (a)(1) should be stricken.

DISPOSITION

Defendant's conviction on count 2 is reversed and the three 5-year enhancements imposed under section 667, subdivision (a)(1) are stricken. The cause is remanded and the trial court is directed to hold a resentencing hearing within 30 days after this opinion becomes final, to impose a sentence in accordance with this opinion, and to forward an amended abstract of judgment to the parties and the Department of Corrections and Rehabilitation within 30 days after resentencing. In all other respects, the judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

IKOLA, J.