Filed 3/8/22  P. v. Defelice CA2/6
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).   This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS DEFELICE,<br><br>    Defendant and Appellant. | 2d Crim. No. B307326<br>(Super. Ct. No. 1492983)<br>(Santa Barbara County)<br><br>OPINION FOLLOWING<br>ORDER VACATING<br>PRIOR OPINION |

On January 26, 2022, our Supreme Court transferred this matter to our court with directions to vacate our prior decision affirming, among other things, Defelice's conviction of corporal injury to a former cohabitant and, as to sentencing, to "reconsider the cause in light of Senate Bill No. 567 (Stats. 2021, ch. 731)."

Senate Bill No. 567 (2021-2022 Reg. Sess.) makes substantial changes to California sentencing laws in cases involving the trial court's authority to impose lower, middle, or high term sentences.  For example, it requires the court in certain cases to impose "the lower term if any of the following was a contributing factor in the commission of the offense . . . . [¶]

. . . The person has experienced psychological, physical, or childhood trauma . . . . [¶] . . . Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (Pen. Code, § 1170, subd. (b)(6)(A) & (C), as amended by Stats. 2021, ch. 731, § 1.3, No. 7 West's Cal. Legis. Service, p. 9107.)[1] The trial court's authority to "impose a sentence exceeding the middle term" now applies only in cases "when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3, No. 7 West's Cal. Legis. Service, p. 9106.)

This new remedial legislation that lowers sentences applies retroactively to cases pending on appeal. (*People v. Babylon* (1985) 39 Cal.3d 719, 722; *In re Estrada* (1965) 63 Cal.2d 740, 744, 748.) Defelice's case is pending.

Defelice and the People agree that, as a result of Senate Bill No. 567, Defelice is entitled to a remand for resentencing. We agree.

At sentencing the trial court stayed the sentences for Defelice's convictions on count 1 – battery causing serious bodily injury (§ 243, subd. (d)); and count 2 – assault with force likely to produce great bodily injury (§ 245, subd, (a)(4)). It used his conviction on count 3 – corporal injury to a former cohabitant (§ 273.5, subd. (a)) as the principal term. Because Defelice fell within the purview of the "Three Strikes" law with two prior

---

[1] All statutory references are to the Penal Code.

strike convictions, the court sentenced him to a third strike term of 25 years to life in prison plus a consecutive 15 years. The parties note the 15-year sentence was comprised of two consecutive five-year enhancements for his two prior serious felony convictions (§ 667, subd. (a)(1)) and *the upper term of five* years for a section 12022.7, subdivision (e) enhancement. Section 12022.7, subdivision (e) provides, "Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years."

In imposing the high term at sentencing, the trial court relied on the probation officer's "opinion" in the probation report about "how disconnected" Defelice appeared to be from his victim; that Defelice referred to her as "the person" and "never [used] her name"; that he said he "suffered his own defensive injuries." The court found aggravating factors and said, "[I]f I'm believing this probation report, . . . essentially Mr. Defelice does not wish to take any responsibility [for his actions]." But these aggravating factors were not based on Defelice's stipulated facts or facts proved beyond a reasonable doubt at trial.

Defelice notes that in addition to his petition for review, he asked our Supreme Court to "transfer the matter back to this court based on [Senate Bill No.] 567" because the trial judge imposed the upper term of five years "by relying on aggravating factors that would not justify that term under current law." (See, e.g., § 1170, subd. (b)(2) [limiting the facts that may now be considered in imposing an upper term].)

After reviewing the record in this case, our Supreme Court granted Defelice's request and vacated our prior decision because

of its apparent concern as to whether this upper term five-year sentence was imposed consistent with the new standards of Senate Bill No. 567. (§ 1170, subd. (b)(2).) Consequently, this case must be remanded to the trial court for resentencing.

Thomas Defelice appeals a judgment following his conviction of battery causing serious bodily injury (§ 243, subd. (d)) (count 1); assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)) (count 2); and corporal injury to a former cohabitant (§ 273.5, subd. (a)) (count 3). As to count 1, the jury found Defelice personally inflicted serious bodily injury. As to count 2, the jury found he personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). As to count 3, the jury found he personally inflicted great bodily injury under domestic violence circumstances. (§ 12022.7, subd. (e).)

We conclude, among other things: 1) substantial evidence supports the judgment; 2) the trial court correctly instructed the jury on the section 273.5 offense; 3) Defelice's counsel was not ineffective; and 4) Defelice may be convicted of corporal injury to a former cohabitant and assault with force likely to produce great bodily injury and battery causing serious bodily injury.

We vacate the sentence and remand for resentencing consistent with Senate Bill No. 567. Should the court wish to impose the upper term, it shall state on the record which factors it relies upon in so doing. In all other respects, we affirm the judgment.

FACTS

L.D. had a sexual relationship with Defelice. She was homeless, but they had lived together in a hotel and at the beach

4

with camping gear.  She shared money, food, and camping gear with him.  He stored his items in her storage unit.

L.D. ended her relationship with Defelice.  She met another man and lived with him.

Years later L.D. became "reacquainted" with Defelice.  She testified that as of January 2016, she had had a "casual relationship" with Defelice for "three or four years."

One day when L.D. was living in an apartment, she loaned Defelice $20 to buy alcohol.  After Defelice returned, he strangled L.D. and slammed her head to the floor.  L.D. "thought that [she] was going to die."  She had to "gasp for air."  The next thing she remembered was waking up in the hospital.

Police Officer Yumaira Kirk responded to a dispatch call.  A neighbor heard "a female yell for help."  Kirk arrived at L.D.'s apartment.  Police Officer Justin Hesketh was there.  Hesketh knocked on the door and said, "Open the front door now." Hesketh heard a male voice say "Be quiet" and "I'm going to jail." He then heard somebody running in the residence.  L.D. eventually opened the door.  She was "in shock, confused, in pain."  Kirk and Hesketh assisted her out of the residence.  L.D. told Kirk that she had been kicked in the head several times. She was missing "gaps" of hair on her head.  Her eyes were "extremely swollen."  L.D. said Defelice had hit her in the eyes.

L.D. told Kirk that Defelice was dissatisfied because she was "not pretty."  He had threatened to strangle her and kill her because of how she looked.  Defelice told her, " 'You'll never scream.  You'll never get out of here.' "  Defelice had pulled her hair.  She said her jaw was "cracked."  She had an "abrasion" on "the left back."  She said, "I think he was grabbing my neck."

5

At the hospital L.D. saw that she was missing a front tooth, her eyes were "swollen and blackened," she was "bruised from head to toe," and there were "hand prints around" her neck.

Jason Prystowsky, an "emergency physician," testified he treated L.D. after she was brought to the hospital by ambulance. She came in with a "cervical collar" spine "immobilization." A "CT scan" showed a "subdural hematoma." L.D. had a "traumatic brain injury" with bleeding "around the brain." She had an "orbital floor fracture" to the bones near her eye, "bilateral zygomatic arch fractures" to her cheek bone area, and a "nasal bone fracture." L.D. had a "contusion in the left suboccipital neck soft issue" area. She had subsequent surgery for a "bilateral zygomatic arch" reduction.

R.M. testified L.D. had a relationship with Defelice in 2004. He broke her arm. In another incident, he hit her in the face. She was taken by ambulance to a hospital.

Police Officer Rashun Drayton testified that R.M. wanted to leave, but L.D. was afraid to because Defelice told her that "he would hurt her or injure her or kill her if she were to leave."

In the defense case, Tom Miller, a district attorney investigator, testified L.D. told him that her relationship with Defelice was "symbiotic." Defelice provided her "with protection in exchange for sexual intimacy."

Sheriff Deputy Julio Gutierrez testified that in 2011 L.D. told him that Defelice "beat [her] up." In a subsequent interview she "recanted."

Kelley Feeley, an "emergency physician," testified Defelice had abrasions on his back, arm, and hand that could be defensive wounds.

6

DISCUSSION

*Substantial Evidence*

For challenges to the sufficiency of the evidence for a conviction, we draw all reasonable inferences in support of the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not weigh the evidence or decide the credibility of the witnesses. We do not resolve conflicts in witness testimony as that is a matter exclusively for the trier of fact.

Defelice contends the evidence is insufficient for a conviction under section 273.5 for corporal injury to a former cohabitant because there is no evidence that he and his victim "regularly share a dwelling."

The People claim "[t]he term 'former cohabitant' does not require that the parties live together in a dwelling." (Boldface omitted.) We agree.

Section 273.5, subdivision (a) provides, in relevant part, "Any person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony . . . ." Subdivision (b) of the statute includes victims who are "former cohabitant[s]," or "someone with whom the offender has, or previously had, an engagement or dating relationship . . . ." (§ 273.5, subd. (b)(2) & (3).)

In *People v. Taylor* (2004) 118 Cal.App.4th 11, 18, the court held, "The term 'cohabitant' has been interpreted 'broadly' to refer to those ' "living together in a substantial relationship–one manifested, minimally, by permanence and sexual or amorous intimacy." ' [Citations.] 'The element of "permanence" in the definition refers only to the underlying "substantial relationship," not to the actual living arrangement.' " The court said, "Although the couple's living arrangements may have been unstable or

7

transitory, this did not deprive them of the statutory protection of section 273.5." (*Id.* at p. 19.) "*Nothing in the language of the statute excludes cohabitants who do not have a permanent residence.*" (*Ibid.*, italics added; see also *People v. Belton* (2008) 168 Cal.App.4th 432, 438 ["A permanent address is not necessary to establish cohabitation, as cohabitation can be found even in 'unstable and transitory' living conditions"]; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1334 [the element of permanence in the definition does not refer "to the actual living arrangement"].)

Consequently, the statute applies to cohabitants whose living arrangements are unstable, transitory, and homeless. Defelice's position leaves homeless women without protection which defeats the remedial goal of this legislation. (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952.) Having a cohabiting relationship in a permanent dwelling is not required. (*People v. Taylor*, *supra*, 118 Cal.App.4th at pp. 18-19.)

There is also evidence of a substantial cohabiting relationship. L.D. testified she had a sexual relationship with Defelice. She was homeless, but she shared money, food, and camping gear with him. Defelice placed his things in her storage unit. L.D. stayed with Defelice for months. For a time she stayed with him at a hotel and at the beach "with camping gear" that she bought. She testified that when she lived on the street, she "spent *most of [her] waking hours together*" with him. (Italics added.)

The relationship between Defelice and L.D. was not sporadic or short term as Defelice suggests. It was long term. In 2011, Defelice told Gutierrez that he had a five-month dating relationship with L.D. L.D. testified that as of January 2016 she had had a "casual relationship" with Defelice for "three or four

8

years." At trial, when asked how long ago did this relationship start, L.D. said, "Maybe seven years ago." The evidence is sufficient. (*People v. Holifield* (1988) 205 Cal.App.3d 993, 1002.)

*Instructional Error*

Defelice contends the trial court erred by giving the jury a modified version of CALCRIM No. 840. We disagree.

The trial court gave the jury the following instruction from CALCRIM No. 840 on the definition of "cohabitants" for section 273.5: "The term *cohabitants* means two unrelated persons living together for a substantial period of time, resulting in some permanency of the relationship. Factors that may determine whether people are cohabiting include, but are not limited to, (1) sexual relations between the parties while sharing the same residence, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) the parties' holding themselves out as domestic partners, (5) the continuity of the relationship, and (6) the length of the relationship. [¶] A person may cohabit simultaneously with two or more people at different locations, during the same time frame, if he or she maintains substantial ongoing relationships with each person and lives with each person for significant periods."

Defelice notes that the trial court added the following language to this instruction: "*Two people may be cohabitants even if they do not have a permanent residence*." (Italics added.) He claims the court erred. But the court's addition is consistent with *People v. Taylor*, *supra*, 118 Cal.App.4th at page 19.

*Ineffective Assistance of Counsel*

Defelice contends his trial counsel was ineffective under *Strickland v. Washington* (1984) 466 U.S. 668, 688, by not challenging the trial court's addition to the instruction. He has to

9

show his lawyer "failed to act" as a "reasonably competent" attorney. (*People v. Price* (1991) 1 Cal.4th 324, 440.) But not challenging a proper instruction is reasonable.

*The Williamson Rule*

Defelice contends, "If the section 273.5(a) conviction stands then the section 243(d) and 245(a)(4) convictions [counts 1 and 2] must be vacated under the *Williamson* rule." (Boldface omitted; *In re Williamson* (1954) 43 Cal.2d 651.) We disagree.

"Under the *Williamson* rule, if a general statute includes *the same conduct* as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86, italics added.) "On the other hand, if the more general statute *contains an element that is not contained in the special statute* and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute. In such situations, because the general statute contemplates *more culpable conduct*, it is reasonable to infer that the Legislature intended to punish such conduct more severely." (*Id.* at p. 87, italics added.) But courts must also consider the legislative goals, and the "entire context surrounding the 'special' statute." (*People v. Jenkins* (1980) 28 Cal.3d 494, 503.)

The People contend the *Williamson* rule does not apply because the crimes in counts 1 and 2 involving felony battery and felony assault do not involve "the same conduct" and do not have the same "elements" as the section 273.5 conviction in count 3. They claim counts 1 and 2 require "more culpable conduct" for a conviction than the count 3 crime, and not applying the *Williamson* rule furthers the legislative intent. We agree.

10

"[F]elony battery, section 243, subdivision (d), requires 'serious bodily injury'; and, felony assault, section 245, subdivision (a), requires 'force likely to produce great bodily injury.' But, the Legislature has clothed persons of the opposite sex in intimate relationships *with greater protection by requiring less harm to be inflicted before the offense is committed*. Those special relationships form a rational distinction which has a substantial relation to the purpose of the statute." (*People v. Gutierrez*, *supra*, 171 Cal.App.3d at p. 952, italics added.)

Consequently, section 273.5 provides vulnerable victims in cohabiting relationships with *more* protection from abusive conduct. It added a new crime with different elements covering different conduct than felony assault and felony battery. (*People v. Villagran* (2016) 5 Cal.App.5th 880, 896 ["This distinction makes it apparent that 'the statues cover different conduct,' and so the *Williamson* rule does not apply"].)

The Legislature added more protection for victims without changing criminal liability for other more serious crimes. (*People v. Sloan* (2007) 42 Cal.4th 110, 119; *People v. Vega* (1995) 33 Cal.App.4th 706, 710 ["Section 273.5 was enacted to expand its predecessor section, a 'wife beating' statute (former § 273d)"].) Former section 273d prohibited corporal injury to a wife. (*People v. Gutierrez*, *supra*, 171 Cal.App.3d at p. 948.) It did not supersede or replace the crime of "felonious assault." (*Id.* at p. 948, fn. 2.) The legislation adding section 273.5 makes no reference to superseding any other felony. (Stats. 1977, ch. 912, § 3, p. 2786.)

"The Legislature has *separately defined* the three offenses of which [Defelice] was here charged and convicted . . . ." (*People v. Sloan*, *supra*, 42 Cal.4th at p. 119, italics added.) Maintaining

the separate identity of these three crimes effectuates "the strong legislative purpose behind [all three] statutes.'" (*Ibid.*) Courts have affirmed convictions of the section 273.5 offense, along with felony assault and felony battery convictions. (*Sloan*, at pp. 110, 119; *People v. Taylor*, *supra*, 118 Cal.App.4th at p. 18.)

Moreover, the Legislature would not supersede the existing protections in the law that protect victims from the more violent felony assault and felony battery crimes because that would defeat its goal "to deter domestic violence." (*People v. Mora* (1996) 51 Cal.App.4th 1349, 1355.) "[T]he Legislature has continually broadened the scope of this protection." (*Ibid.*) Defelice's position narrows it, leaving victims with *no protection* from the more serious offenses.

Defelice suggests felony battery and felony assault are the typical domestic violence crimes. But if that were the case, there would have been no need to enact section 273.5 to provide protection for a different more common and less violent crime. Moreover, " ' "[t]o immunize" defendant from conviction of [assault by means of force likely to produce great bodily injury and battery with serious bodily injury simply because a great bodily injury enhancement was found true under the charge of infliction of corporal injury on a spouse] "would be irrational . . . ." ' " (*People v. Sloan*, *supra*, 42 Cal.4th at p. 119.)

## DISPOSITION

The sentence is vacated and the case is remanded to the trial court for resentencing consistent with Senate Bill No. 567. Should the court impose the upper term, it should state it reasons for doing so. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

13

Thomas R. Adams, Judge

Superior Court County of Santa Barbara

_____

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.