Filed 2/13/14  P. v. Hyde CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056434 |
| v. | (Super.Ct.No. RIF1104102) |
| RALPH RAYMOND HYDE JR., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed.

Michael P. Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Peter Quon, Jr., Susan Miller and Ronald A Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Ralph Raymond Hyde Jr. threw a frozen dinner at his girlfriend during an argument and punched her in the face. She sustained a cut near her right eyebrow and had redness on her face.

Defendant was convicted by a Riverside County jury of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1); count 1). [1] Defendant was additionally found guilty of corporal injury to a spouse or cohabitant (§ 273.5, subd. (a); count 2). After waiving his right to a jury trial, in a bifurcated court trial, the trial court found that defendant had served one prior prison term within the meaning of section 667.5, subdivision (b). Defendant was given a four-year state prison sentence.

Defendant now contends on appeal as follows:

1.      Insufficient evidence was presented to support his conviction of assault with force likely to produce great bodily injury.

2.      Insufficient evidence was presented to support his conviction of corporal injury to a spouse or cohabitant.

3.      The jury should have been instructed on simple battery as a lesser offense of corporal injury to a cohabitant.

4.      The jury was improperly instructed that it must first acquit him on the greater offense of aggravated assault on count 1 before considering simple assault.

5.      CALCRIM No. 220 does not define reasonable doubt in a manner consistent with the requirements of federal due process.

_____

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

We affirm the judgment in its entirety.

I

FACTUAL BACKGROUND

On October 4, 2011, Kimberly Barker and defendant were dating. They had been together for two years. On that evening, she was at defendant's house which was located at 1468 River Drive in Norco. Barker stayed at defendant's house "most of the time."

At the time of trial, defendant and Barker were still dating and she did not want to testify against him. Barker insisted that she was drinking that night and could not recall anything that had happened. Barker drank a pint of vodka every day so she probably drank that much on October 4. Barker explained that she oftentimes blacked out from drinking and had fallen down when she blacked out. She drank in the morning prior to testifying.

On the night of October 4, 2011, Barker called 911 from the River Drive home. She advised the 911 dispatcher that her "boyfriend," who she identified as defendant, had beat her up. She explained that she was bleeding from her eye or side of her head but was not sure if she needed an ambulance. Barker stated that defendant hit her with a frozen dinner and punched her with his fist. Barker told the 911 dispatcher that she was scared because defendant was crazy and had weapons. She was afraid he was going to kill her because she was calling the police.

Misty Walker was defendant's best friend. At around 10:00 p.m. on October 4, she was in the backyard of defendant's house smoking a cigarette. She heard defendant and Barker arguing inside the house. From outside, she saw them through the kitchen

3

window.  Barker was yelling and defendant told her to shut up.  Walker saw arms "flailing" so she went inside and broke the two of them up.  Barker was drunk and kept yelling.  Walker noticed blood on Barker's face and shirt.  Walker did not see defendant throw anything at Barker but she had been in the backyard while they were fighting.

Deputy Sheriff Bruno Balderama of the Riverside County Sheriff's Department responded to Barker's 911 call.  When he arrived at approximately 10:00 p.m., Barker was scared and crying.  Deputy Balderama had previous encounters with Barker and he had never seen her so upset.  Barker denied to Deputy Balderama that she had been drinking and she did not smell of alcohol.

Barker had a clean cut over her eye which was bleeding down her face.  Her face was red and blotchy.  Barker told Deputy Balderama that she had said something to defendant that made him mad.  He told her to shut her mouth.  He then threw a frozen TV dinner at her head.  He also punched her in the face.  Paramedics were called to treat her cut.  Barker told Deputy Balderama that there had been at least 15 prior incidents of violence between her and defendant that she had been too scared to report.

Deputy Balderama recorded two interviews he had with Barker that night, which were played to corroborate Deputy Balderama's testimony and to impeach Barker's trial testimony.  Barker told Deputy Balderama she was scared that defendant was going to kill her for calling the police.  She told him she got the laceration on her face because defendant threw a "big" frozen dinner at her.  She immediately started bleeding.  In addition, defendant punched her in the face.  Deputy Balderama commented that she was

4

probably going to need some stitches. She said her home address was on Boxwood Drive in Eastvale.

Jennifer Ferguson had dated defendant for six years. Starting in 2000 or 2001, he began being violent with her. One time he dragged her by her hair for a couple of feet. He also had slapped and hit her. She ended her relationship with him because of the violence.

Defendant presented no evidence on his behalf.

II

INSUFFICIENT EVIDENCE OF ASSAULT WITH FORCE LIKELY TO

PRODUCE GREAT BODILY INJURY

Defendant contends that the evidence was insufficient to support his conviction of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)) due to the lack of evidence that throwing the frozen dinner was likely to produce great bodily injury.

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must

5

be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Section 245, subdivision (a)(1) punishes an assault committed with force likely to cause great bodily injury. "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. [Citations.]" (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) "'The statute prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury. While . . . the results of an assault are often highly probative of the amount of force used, they cannot be conclusive.' [Citation.] '[T]he question of whether or not the force used was such as to have been likely to produce great bodily injury, is one of fact for the determination of the jury based on all the evidence, including but not limited to the injury inflicted. [Citations.]' [Citation.]" (*Id.* at pp. 1065-1066.)

The use of hands or fists alone may support a conviction of assault by means of force likely to produce great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) A single blow with a fist is sufficient to support a conviction for assault by means likely to produce great bodily injury. (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162.)

6

In accordance with the above, the jury was instructed as to the amount of force likely to cause great bodily injury, that "the defendant did an act that, by its nature, would directly and probably result in the application of force to a person, and the force used was likely to produce great bodily injury." It was also instructed, "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

Here, the evidence established that defendant used force likely to produce great bodily injury. Defendant threw a frozen dinner, an undisputed hard object, directly at Barker hitting her in the face. She sustained a laceration just above her eye that was profusely bleeding. Even if she had not sustained the injury, throwing a hard object at a person certainly could result in great bodily injury. Moreover, Barker repeatedly stated that defendant punched her in the face. Barker only had some redness on her face, but it was not required to be shown that she sustained any actual injury. (*People v. Aguilar, supra,* 16 Cal.4th at p. 1028.) The jury could reasonably believe that she was punched by defendant.[2] Based on the foregoing, substantial evidence supported defendant's conviction of assault with force likely to produce great bodily injury.

---

[2] The prosecutor advised the jurors that if they found that defendant threw the frozen dinner at Barker, he was guilty, and that throwing a frozen hard object at someone was inherently dangerous. While the prosecutor did not rely, in her argument, on the fact that defendant punched Barker in the face, the jury could reasonably consider the evidence to support the conviction.

## III

## INSUFFICIENT EVIDENCE OF COHABITATION

Defendant argues that the evidence presented to support that Barker was cohabitating with him was insufficient to support his conviction of corporal injury to a cohabitant (§ 273.5) in count 2.

Section 273.5 prohibits corporal injury resulting in a traumatic condition upon a spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child. The jury here was instructed that in order to find a violation of section 273.5 in this case, it must find that defendant willfully inflicted a physical injury on a cohabitant, and that the injury inflicted resulted in a traumatic condition. As for the definition of cohabitant, the jury was instructed that "[t]he term cohabitants means two unrelated persons living together for a substantial period of time resulting in some permanency of the relationship. Factors that may determine whether people are cohabitating include, but are not limited to, sexual relations between the parties while sharing the same residence, sharing of income or expenses, joint use or ownership of property, parties holding themselves out as husband and wife, or domestic partners, the continuity of the relationship and the length of the relationship."

In *People v. Moore* (1996) 44 Cal.App.4th 1323, the court considered whether a defendant could be deemed a cohabitant with his victim when he was cohabiting with someone else at a different location during the same time frame. It noted that cohabitant has been interpreted broadly to mean, "'an unrelated man and woman living together in a substantial relationship — one manifested, minimally, by permanence and sexual or

amorous intimacy.' [Citation.]" (*Moore, supra,* at p. 1333.)  It also found that, "The element of 'permanence' in the definition refers only to the underlying 'substantial relationship,' not to the actual living arrangement." (*Id.* at p. 1334.)  The court held, "a defendant may cohabitate simultaneously with two or more people at different locations, during the same time frame, if he maintains substantial ongoing relationships with each and lives with each for significant periods." (*Id.* at p. 1335.)  The court concluded that the defendant should not be able to immunize himself from criminal liability for injuring a cohabitant simply based on the fact that he lived at another location part of the time. (*Ibid.*)

In *People v. Taylor* (2004) 118 Cal.App.4th 11, the victim testified that "she had been dating [the defendant] for five months, and that they were 'living together' in his car at the time of the charged offenses.  [The victim] was 10 weeks pregnant with [defendant]'s child.  . . . According to [the victim], she lived with [the defendant] in his car 'for a while' after having stayed with her aunt in Vista.  [The victim]'s testimony suggested that she had lived with [the defendant] for periods of time when she was homeless and had no other place to stay.  [The victim] and [the defendant] spent the night before the charged crimes in [the defendant]'s car at the beach." (*Taylor, supra,* at p. 19.)  The *Taylor* court concluded, "[t]aken in their totality, these facts were sufficient to establish that [the victim] and [the defendant] were living together in a substantial relationship that was characterized by permanence and sexual or amorous intimacy. [Citation.]" (*Ibid.*)

9

Here, the evidence showed that defendant and Barker had a substantial ongoing relationship and lived with each other for significant periods. During Barker's trial testimony, she acknowledged that she stayed at defendant's house most of the time and that they were in an intimate relationship. She spent the night with him and "pretty much" lived in his room. She kept clothing and a toothbrush at his house. She saw him almost daily. After the incident in this case, she no longer "lived" at defendant's house. Walker testified that as far as she knew, Barker had been staying with defendant for "a little bit."

The only contrary evidence was that Barker told Deputy Balderama that her home address was Boxwood Drive in Eastvale. However, as in *Moore*, the fact that Barker may have also stayed at another location did not exempt her from the protections of section 273.5. The jury could reasonably conclude based on the evidence presented that Barker and defendant were living together at least part of the time and were in an intimate, ongoing relationship. This was sufficient to establish that they were cohabitants within the meaning of section 273.5.

IV

LESSER INCLUDED OFFENSE INSTRUCTION OF SIMPLE BATTERY

Defendant contends, closely related to his previous argument, that the trial court should have sua sponte instructed the jury on simple battery (§ 242) as a lesser included offense of corporal injury to a cohabitant in count 2 because of the "reason to doubt" whether the People met their burden of proving cohabitation.

10

The trial court must instruct the jury, whether sua sponte or on the defendant's request, on a lesser included offense "'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

As set forth, *ante*, section 273.5 prohibits corporal injury resulting in a traumatic condition upon a spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child. "Causing a 'traumatic condition,' means the infliction of 'a wound or other abnormal bodily condition resulting from the application of some external force. [Citation.]'" (*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980.) Section 242 provides that "[a] battery is any willful and unlawful use of force or violence upon the person of another." Simple battery is a lesser included offense of section 273.5. (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952.)

Here, defendant contends he was entitled to a lesser included offense instruction on simple battery pursuant to section 242 based on the lack of evidence of the greater offense under section 273.5 because there was weak evidence of cohabitation. However, we have already concluded that there was substantial evidence that supported there was cohabitation. No lesser offense instruction was necessary based on the instant facts.

Even if we were to conclude that the instruction on simple battery should have been given, we will reverse a judgment based upon the failure to instruct as to a lesser included offense "only if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained

11

a more favorable outcome had the error not occurred." (*People v. Breverman, supra,* 19 Cal.4th at p. 178, citing to *People v. Watson* (1956) 46 Cal.2d 818, 836.)  Under this standard, there is a reasonable probability of a more favorable result "when there exists 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.'  [Citation.]" (*People v. Mower* (2002) 28 Cal.4th 457, 484.)  The reviewing court may consider the relative strengths and weaknesses of the evidence supporting the greater and lesser instructions.  (*Breverman,* at pp. 177-178.)

Initially, for count 1, the jury was instructed with the lesser offense of simple assault.  As to the force required for simple assault, the instruction to the jury stated, "the terms application of force and applied force mean to touch in a harmful or offensive manner.  The slightest touching can be enough if it's done in a rude or angry way. . . . The touching does not have to cause pain or injury of any kind."  Despite the instruction on simple assault, the jury concluded that defendant used force likely to cause great bodily injury.  It follows that if it had been instructed with simple battery it likewise would have rejected that Barker's injuries were less than a traumatic condition.  "It is *injury* resulting in a traumatic condition that differentiates [the greater crime of a violation of section 273.5] from lesser offenses." (*People v. Gutierrez, supra,* 171 Cal.App.3d at p. 952.)  Here, Barker sustained a cut on her head that continued to bleed, and had redness on her face.  It is unlikely the jury would have found defendant guilty of simple battery based on the injuries sustained by Barker.

Finally, as previously stated, the evidence of cohabitation was strong. It is not reasonably probable that the result of this case would have been different had the jury been instructed on simple battery.

V

ACQUITTAL-FIRST INSTRUCTIONS

Defendant contends that the trial court improperly instructed the jury that they could consider a conviction of simple assault for count 1 only if it first found him not guilty of the greater crime of assault with force likely to cause great bodily injury. Defendant contends this so called "acquittal-first" rule violated his right to due process and right to a jury trial.

As previously stated, the jury was instructed on the lesser offense of simple assault for the charge in count 1 of assault with force likely to produce great bodily injury. The jury was instructed as to how it should consider the lesser offense as follows: "If all of you find that the defendant is not guilty of the greater crime, you may find him guilty of a lesser crime, if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct. It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty to a lesser crime only if you have unanimously found the defendant not guilty of the corresponding greater crime."

Initially, we find that defendant has forfeited this issue on appeal. The failure to object below to an instruction correct in the law forfeits the claim on appeal. (*People v.*

13

*Virgil* (2011) 51 Cal.4th 1210, 1260.) We find no objections to the instruction in the record. As such, defendant has waived his claim that the jury was improperly instructed.

Even if we were to consider the merits of defendant's claim, there was no instructional error. "The jury may deliberate on the greater and lesser included offenses in whatever order it chooses, but . . . it must acquit the defendant of the greater offense before returning a verdict on the lesser offense." (*People v. Fields* (1996) 13 Cal.4th 289, 309.) The California Supreme Court has repeatedly upheld instructions similar to those given in this case as properly espousing the above principle. (See, e.g., *People v. Jurado* (2006) 38 Cal.4th 72, 125; *People v. Nakahara* (2003) 30 Cal.4th 705, 715.) We are bound by these decisions and defendant has provided no additional argument that this Court finds reasonable in order to ignore these decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

VI

REASONABLE DOUBT INSTRUCTION

Defendant contends that CALCRIM No. 220, the standard instruction on reasonable doubt, does not define reasonable doubt in a manner consistent with the requirements of federal due process. Here, the jury was instructed on reasonable doubt as follows: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against a defendant just because he has been arrested, charged with a crime or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People

14

prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.  [¶]  Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.  [¶]  In deciding whether the People have proved their case consider all of the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he's entitled to an acquittal, and you must find him not guilty."

Once again defendant did not object to the standard instruction.  As such, he has forfeited the issue on appeal.  (*People v. Virgil, supra,* 51 Cal.4th at p. 1260; *People v. Stone* (2008) 160 Cal.App.4th 323, 331.)

Defendant's claim that the contents of the reasonable doubt instruction violated his due process rights or lessened the burden of proof below that of finding guilt beyond a reasonable doubt has been repeatedly raised and rejected.  (*People v. Garelick* (2008) 161 Cal.App.4th 1107, 1117-1118; *People v. Stone, supra,* 160 Cal.App.4th at pp. 330-332; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1238-1239; *People v. Guerrero* (2007) 155 Cal.App.4th 1264, 1267-1269.)  The California Supreme Court has rejected the same challenges to CALJIC No. 2.90, which contained similar language.  (*People v. Farley* (2009) 46 Cal.4th 1053, 1122.)  Defendant offers no compelling justification for concluding CALCRIM No. 220 is unconstitutional.  We find the reasoning in these cases sound and conclude CALCRIM No. 220 properly defined reasonable doubt.

15

## VII

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.