Filed 3/24/15  P. v. Rodriguez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY LORENZO RODRIGUEZ,<br><br>        Defendant and Appellant. | A137490, A138562<br><br>(Contra Costa County<br>Super. Ct. No. 05-101106-3) |

Anthony Lorenzo Rodriguez appeals from a judgment upon a jury verdict finding him guilty of possessing cocaine salt and methamphetamine for sale (Health & Saf. Code, §§ 11351, 11378 [counts one and two]) and active participation and promotion of a criminal street gang (Pen. Code,[1] § 186.22, subd. (a) (section 186.22(a)) [count three]). The jury also found true the allegations as to counts one and two that the offenses were committed for the benefit and at the direction of, and in association with the Norteños, a criminal street gang, in violation of section 186.22, subdivision (b)(1).  The trial court found that defendant suffered a prior serious felony conviction (§ 667, subd. (a)(1)); a prior "strike" conviction (§§ 667, subds. (b)–(i), 1170.12); and that he served a prior prison term (§ 667.5, subd. (b)).  Defendant contends that the evidence is insufficient to support the gang participation offense, and that the corresponding serious felony enhancement must be stricken.  He also contends that he is entitled to additional custody credits.  We reverse the gang participation conviction and strike the section 667,

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

1

subdivision (a)(1) enhancement and modify the judgment accordingly. We remand the matter to the trial court for a calculation of custody credits.

## I. FACTS

On the afternoon of April 15, 2012, Officer Miguel Aguiar was on patrol in Brentwood when he observed defendant standing outside of a Ford Thunderbird in the carport of the apartment complex at 100 Village Drive. Aguiar knew defendant from previous contacts. Defendant was on parole and subject to a search clause. Aguiar searched defendant and found keys in his right front pants pocket.

Aguiar used defendant's keys to open the Ford Thunderbird which defendant said he had recently purchased. Officer Peter Folena, who also responded to the scene with other officers, found nothing relevant in the car. They proceeded to Apartment 221 at 100 Village Drive. Dennis Resendez responded to the door and consented to a search of his apartment.

The police found a black briefcase inside Resendez's apartment. Sergeant Misquez contacted Aguiar and obtained the keys that had been seized from defendant. Among the keys were four small padlock keys, all of which fit the two padlocks that were on the briefcase.

Inside the briefcase, the police found two large plastic bags that contained smaller baggies with a crystal-like substance. The briefcase also contained a black replica firearm with a clip of BBs, a pay-owe sheet, $30, and a box of blank checks. There were no latent prints found on the baggies containing the controlled substances.

Resendez had met defendant a month or two before the search. He knew defendant's mother who lived in an apartment in the same complex. Defendant was living in his mother's apartment. About two or three weeks before the search, defendant's mother asked Resendez to do her a favor and to keep a black briefcase in his apartment. Defendant would come by the apartment once or twice a day every other day or so and use the briefcase. Resendez stepped out of the room when defendant was there. He suspected something illegal but did not want to know what was in the briefcase.

2

Defendant did not have a key to Resendez's apartment, but Resendez had a key to defendant's mother's apartment so that he could walk her dog when she was away.

Aguiar, along with Officer Daansen, proceeded to search defendant's apartment at the 100 Village Drive complex. They found two notebooks on the bedroom floor of the apartment. The notebooks contained lyrics with two stanzas relating to drug dealing and selling drugs including the phrase, "Drug deala [*sic*] is all I know." The notebook also contained numerous references to being a Norteño, and to R20, a reference to the Rollin' 20s (a subset of the Norteños), and living the life of a gang banger and drug dealer. They also found some photographs. Some of the photographs showed defendant wearing a black and red jacket kneeling in the center front of a group of people wearing red clothing. Aguiar testified that defendant's kneeling in the center of the photographs signified a position of power within the group. The red clothing signified membership in the Norteños criminal street gang. Aguiar identified Henry Grenado, another individual standing to the left of defendant as a Norteño gang member. Another photograph found in the apartment showed U.S. currency in numerous denominations which Aguiar opined demonstrated power to a gang because it shows the gang's ability to further its activities. In another photograph, Grenado is seen flashing one and four with his fingers which Aguiar testified was a gesture signifying gang affiliation with the Norteños. Aguiar opined that defendant's offenses were committed for the benefit of the Norteños based on the large quantity of cocaine and methamphetamine found. He testified that the Norteño gang benefited in that money obtained from the sales would go to purchasing vehicles, clothing, weapons and additional narcotics to further gang activity in the neighborhood. Aguiar also testified that Norteños were required to pay taxes for protection to those members who are incarcerated.

Shana Meldrum, a criminalist, tested the contents of the baggies found in the briefcase. She testified that three of the baggies contained 55.61, 5.37, and 27.98 grams of cocaine salts. The other baggies contained 54.32 and 2.84 grams of methamphetamine, and a large plastic bag containing three baggies had a combined weight of .79 grams of methamphetamine.

Kathryn Novaes, a fingerprint expert, testified that two palm prints found on the pay-owe sheet excluded defendant. She also examined the fingerprints found on the blank checks in the briefcase. Some of these prints excluded defendant and for others, the results were inconclusive.

Aguiar, who also testified as an expert in the area of possessing cocaine with intent to sell and possession of methamphetamine with intent to sell, testified that a usable amount of cocaine was a quarter of a gram, and that a usable amount of methamphetamine was a tenth of a gram. Based on the quantity of drugs found in the briefcase and the absence of any drug paraphernalia, Aguiar opined that the drugs were possessed for sale rather than for personal use.

Deputy Sheriff Chris Wilson processed defendant's intake at the Martinez Detention Facility. When Wilson asked defendant about his gang affiliation, defendant stated that he was a Norteño from the Rollin'20s set of Contra Costa County. During his detention at the Martinez Detention Facility, defendant became an informant and provided extensive information about the Norteños in the facility.

Defendant, who represented himself at trial, testified in his own behalf. He admitted that he was a member of the Rollin'20s set and that he was a Norteño. He also admitted committing a prior robbery. He denied that he was a drug dealer. He also denied ownership of the briefcase. He said that he got the keys to his mother's apartment from Resendez who lived in the same building. He knew that Resendez used drugs but did not know if he was a dealer.

Gary Mitchell, a Norteño gang member, testified as an expert regarding the Norteño gang. He testified that defendant was not a Norteño gang member because he was not in the gang's "books." He also denied that Norteños are obligated to pay taxes to members in prison.

## II. DISCUSSION

### 1. Gang Participation Offense

The elements of the gang participation offense are (1) active participation in a criminal street gang; (2) knowledge that the gang's members engage in or have engaged

4

in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*).)

In *Rodriguez*, *supra*, 55 Cal.4th at page 1128, our California Supreme Court held that a defendant cannot be convicted of the gang participation offense if he commits a felony but acts alone. The court reasoned that "with section 186.22(a), the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony regardless of whether such felony was gang related." (*Id.* at p. 1138.) The evidence in *Rodriguez* included the testimony of two gang experts who opined that robbery was a primary activity of the Norteño gang, and that the attempted robbery of the victim in the case was committed for the benefit of the gang. (*Id.* at p. 1129.) Because there was no evidence that the defendant acted with anyone else, the court held that the defendant was not guilty of section 186.22(a). (*Id.* at pp. 1129, 1139.)

Relying on *Rodriguez*, defendant contends that the evidence is insufficient to support his conviction of participating and promoting a criminal street gang because there was no evidence that he sold drugs in order to willfully further or promote a gang. He also argues that because the section 186.22 conviction must be reversed, the court must also strike the five-year enhancement imposed pursuant to section 667, subdivision (a)(1).

We review the judgment under the substantial evidence standard. (*People v. Hatch* (2000) 22 Cal.4th 260, 272.) Under this standard, we must review " 'the whole record in the light most favorable to the judgment' and decide 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*Ibid.*, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.) If the circumstances reasonably justify the verdict, we cannot reverse merely because a contrary finding might also be reasonably deduced from the circumstances. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) We will reverse only if it "clearly appear[s] that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment]." (*Ibid.*)

The evidence here is insufficient to show that defendant engaged in drug sales with any other member of the Norteño gang. While he admitted his gang membership, and through his notebooks, admitted that drug dealing and gang membership were his "life," there was no evidence that he acted with another member of the gang in selling the cocaine and methamphetamine. Aguiar's expert testimony that the offenses were committed for the gang's benefit did not constitute substantial evidence. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 553, 558–560 [insufficient evidence that the defendant was assisted by other gang members in his possession of a firearm and vehicle theft even though gang expert testified that the offenses benefitted the gang].) The Attorney General argues that the fingerprint evidence showing that a person other than defendant handled the pay-owe sheet and checks found in the briefcase is evidence supporting the gang participation offense. We disagree. Although the evidence suggests that another person at some point had access to the pay-owe sheet and blank checks, there is simply no evidence to suggest that the person was a gang member. "[S]ection 186.22(a) reflects the Legislature's carefully structured endeavor to punish active participants for commission of criminal acts done *collectively* with gang members. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139.) Because the evidence was insufficient to demonstrate that defendant acted with others in this instance, the evidence does not support his conviction for violating section 186.22(a). (*Ibid.*)

## 2. Section 667, Subdivision (a)(1) Enhancement

Defendant argues that we must strike the five-year enhancement imposed pursuant to section 667, subdivision (a)(1) because without the section 188.22(a) conviction, his current offenses are not serious felonies. We agree that section 667, subdivision (a)(1) "applies only if the current conviction itself is also a serious felony." (*People v. Taylor* (2004) 118 Cal.App.4th 11, 22.) Defendant's convictions for violating Health and Safety Code sections 11351 and 11378 are not within the group of serious felonies listed in

6

section 1192.7, subdivision (c) which defines serious felonies.[2] (*Ibid.*; see § 1192.7, subd. (c).) Accordingly, since defendant's current offenses are not serious felonies, we must strike the five-year enhancement imposed pursuant to section 667, subdivision (a)(1).

### 3. Custody Credits

Finally, defendant contends that he is entitled to 253 days of additional custody and conduct credits because the trial court incorrectly calculated the number of days he served in presentence custody and erred in limiting his conduct credit days to 15 percent under section 2933.1.[3] The Attorney General concedes the error inasmuch as defendant's current offenses are not felony offenses listed in section 667.5. (*People v. Thomas* (1999) 21 Cal.4th 1122, 1127 [limitation on credits applies only to those violent felonies listed in section 667.5, subdivision (c)].) The parties disagree on whether defendant is entitled to 252 or 253 days. We remand the matter to the trial court for a calculation of the custody credits to which defendant is entitled.

### III.  DISPOSITION

The judgment of conviction of gang participation (count three) is reversed and the section 667, subdivision (a)(1) enhancement is stricken. The matter is remanded to the trial court with directions to amend the abstract of judgment accordingly and for a calculation of custody credits. The trial court is directed to forward the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

---

[2] Under section 1192.7, subdivision (c), serious felonies include murder, mayhem, rape, arson, robbery, kidnapping, and carjacking.

[3] Section 2933.1, subdivision (a) provides that "[n]otwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."

_____

Rivera, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.