Filed 9/9/22 P. v. Jones CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095063 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE009236) |
| v. | |
| CORDELL RICHARD JONES, | |
| Defendant and Appellant. | |

A jury found defendant Cordell Richard Jones guilty of infliction of corporal injury upon a spouse. The trial court then found defendant had suffered three prior violent or serious felony convictions and sentenced defendant to the upper term of five years, doubled for a prior strike.

On appeal, defendant contends two sentencing issues resulted in prejudicial error: (1) the trial court failed to consider during sentencing his posttraumatic stress disorder (PTSD) caused by his military service; and (2) the trial court's finding as to two of the

prior strike convictions lacked substantial evidence. Defendant also asserts cumulative prejudice from these errors.

We requested the parties brief the possible application of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567). In his supplemental brief, defendant contends the trial court's sentence also violates the statutory changes made by Senate Bill 567.

We find insufficient evidence supported the trial court's finding on two of defendant's prior strikes, but find this error, and any other potential sentencing errors, harmless and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Trial*

At defendant's jury trial, M.D., defendant's wife, testified that on May 27, 2021, defendant jumped on top of her and forcefully put his hand around her throat. M.D. moved out of the house, but a few days later defendant followed her in his car, prompting her to call 911 and tell the operator defendant was chasing her and he "is violent and he's already abused me once." Evidence of defendant's abuse of a prior partner was also introduced at trial.

The jury found defendant guilty of the sole charge of infliction of corporal injury upon a spouse resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a)).[1]

*B. Prior Convictions*

In addition to the one felony charge, it had been alleged defendant had three prior serious or violent felony convictions. Defendant waived his right to a jury trial on his prior convictions. At the court trial, the prosecution presented a packet of documents from a parole case records administrator of the Department of Corrections and

---

[1] Undesignated statutory references are to the Penal Code.

Rehabilitation. The cover letter to the packet stated the administrator "certif[ied]" that the copies of the attached documents "are true and correct copies of those in my custody as required by law."

Included in this packet were abstracts of judgment for the three prior convictions alleged to be serious or violent felony convictions: one in 2000 for "Assault w/Deadly Weapon or Force" (§ 245, subd. (a)(1)), and two in 2015 for "Assault w/Deadly Weapon" (§ 245, subd. (a)) and "Battery w/Serious B. Injury" (§ 243, subd. (d)).[2] The abstracts also showed four other felony convictions: one in 2005 for "False Imprisonment" (§§ 236/237), one in 2007 for "Corporal Injury to Spouse and/or Roomate [*sic*]" (§ 273.5, subd. (a)), and two in 2015 for "Assault to Produce GBI" (§ 245, subd. (a)) and "Spousal Abuse" (§ 273.5, subd. (a)). The 2004 and 2007 abstracts include a note that those sentences were to run concurrent with "PAROLE VIOLATION" and "PAROLE VIOLATIONS," respectively. The packet also included a prison movement history stating defendant was paroled on February 21, 2020. Defendant did not present any evidence, nor did he raise any objection to the People's evidence.

The trial court found, beyond a reasonable doubt, that the prior serious or violent felony convictions allegations were true, so "the People have sustained their burden as to proving those priors for purposes of sentencing."

*C. Sentencing*

The probation report prepared for sentencing noted defendant's criminal history as: "Between 1994 and 2015, the defendant sustained adult felony convictions for violations of Penal Code Sections 245(a)(1), (2 counts), 236/237, 273.5(a), (2 counts), 243(d), attempted robbery, and a drug violation. Between 1989 and 2013, the defendant sustained adult misdemeanor convictions for violations of Penal Code Sections 243(e),

---

[2] Original capitalizations in the abstracts of judgment are not maintained.

3

242, unauthorized use of a vehicle, assault (9 counts), aggravated assault, damage property [*sic*], and disorderly conduct." Defendant also told the probation officer "he was diagnosed with PTSD in 1992 as a result of being in the military. He was not prescribed medication and has not received counseling." The report recommended the upper term "after consideration of Rule 4.421(b)(2), in that the defendant's prior convictions as adult [*sic*] are numerous."

At the October 12, 2021 sentencing hearing, defendant, representing himself, first argued that the probation report incorrectly reported the number of past convictions. He stated, "instead of nine counts of aggravated assault, there's actually, like, six or seven" because some of them were from the "[s]ame case, different charges." The trial court sought clarification, stating, "They still count, but your concern is that I not have the impression these are all separate events?" Defendant responded, "Yes," and the court stated, "I understand." On the point of the number of assaults, the prosecutor explained "in Arizona [defendant] has a lot of dual arrests and convictions. [¶] . . . [S]o when I count them up . . . I get eight from Arizona and then one misdemeanor 242 in Sacramento County in 2013." Defendant did not bring up his past convictions again but then argued for a lower term because he took numerous classes in prison, which allowed for early release on his prior case, and that while "on parole, this is the only incident that has ever - - was ever brought to and was satisfactory according to my parole agent." The prosecutor then read a victim impact statement from M.D. and defendant's past partner made a statement about his abuse of her.

The court then stated: "[C]onsideration of giving you something less than the upper term was given focus. . . . [¶] . . . [¶] . . . The reality is that you have been a repeat, chronic and consistent violent offender over and over and over again. [¶] . . . [Y]ou have continued to commit [domestic violence] despite efforts by the criminal justice system to dissuade you, both on probationary terms and supervised county prison commitments and releases." The court also noted that defendant had been released early on his previous

4

case, but has shown he is "somebody who functions well in an institutional setting and very, very poorly and at a great risk to other people, particularly domestic partners, when you're on the outside."

The court continued: "[S]o I am going to impose the upper term in that virtually every factor of Rule of Court 4.421(b) is in place here: Lots of prior convictions, increasing seriousness, on a trajectory that is lessened only by the current offense, because the last time you were committed to state prison was much worse, but the crime, in a sense, is every bit as serious in that it was committed -- it was a serious crime in and of itself, but it was committed after, after, after you had been repeatedly addressed by the criminal justice system, most recently for a very serious and violent offense before the current one.

"You were on parole at the time of the commission of this offense, and you failed to profit in any way in terms of your own development and improvement and the opportunity to take advantage of the early release and put yourself right back into the criminal justice system and now right back into prison.

"You're an intelligent man. I think you are a capable individual in terms of holding down jobs and making money, but, sadly and repeatedly, you have proven yourself not to be somebody who can be out in the public. You are a danger and threat to other people, particularly to domestic partners.

"So I am imposing the upper term of five years, doubled to ten years as a consequence of the strike." Neither defendant, the prosecutor, or the trial court referenced defendant's PTSD during the sentencing hearing.

### DISCUSSION

### I

### *Senate Bill 567*

We ordered the parties to submit supplemental briefs addressing the potential application of Senate Bill 567 (2021-2022 Reg. Sess.), which became effective after

5

defendant's sentencing hearing and modified the standards for imposing a sentence under a triad scheme. Defendant argues in his supplemental brief the trial court premised the upper term on factors now rendered improper, and this error is not harmless, necessitating reversal and remand for resentencing. We find the trial court's analysis still proper after Senate Bill 567, but any error nonetheless harmless.

When the trial court sentenced defendant, former section 1170 provided that when a judgment of imprisonment is to be imposed and the statute authorizes three potential terms, "the choice of the appropriate term shall rest within the sound discretion of the court." (Former § 1170, subd. (d).)

Senate Bill 567, effective January 1, 2022, amended sections 1170 and 1170.1 to limit the trial court's discretion to impose a sentence greater than the middle term unless the aggravating factors justify doing so. (§ 1170, subd. (b)(1), as amended by Stats. 2021, ch. 731, § 1.3.) The facts relied on for selecting a term exceeding the middle term must also have either been stipulated to by the defendant or found true beyond a reasonable doubt at a trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(2).) But "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Like the parties, we find section 1170's current statutory language is ameliorative and applies retroactively to all nonfinal convictions. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

We further find the trial court's sentence adheres to the amendments in 1170, because it imposed the upper term based on defendant's prior convictions established by the beyond a reasonable doubt standard, by permissible means, i.e., certified records. The court emphasized defendant's extensive criminal history throughout its explanation for the upper term, stating: Defendant has been "a repeat, chronic and consistent violent offender over and over and over again," he has "[l]ots of prior convictions," and "sadly

6

and repeatedly, you have proven yourself not to be somebody who can be out in the public."

Many of defendant's prior criminal convictions were established through a certified record of conviction, as now required by the recent amendments to 1170. The prosecutor provided a packet from the Department of Corrections and Rehabilitation with a letter from a custodian of these documents certifying their authenticity. These documents included the abstracts of judgment for seven of defendant's most recent felony convictions, supporting the trial court's finding that defendant has been a repeat violent offender.

The court also did find "virtually" every aggravating factor under California Rules of Court, rule 4.421(b) applied to defendant. These are aggravating factors "relating to the defendant," and are: (1) the defendant has engaged in violent conduct indicating a serious danger to society; (2) the defendant's prior convictions are numerous or of increasing seriousness; (3) the defendant served a prior term in prison or jail; (4) the defendant was on probation or parole when the crime was committed; and (5) the defendant's prior performance on probation or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b).)

But the trial court's analysis of these factors was also entirely based on defendant's certified record of prior convictions. The court seemingly combined the seriousness analysis for the first two factors, saying the current crime was not as serious as the prior convictions. However, it was "every bit as serious" because it was committed after defendant "had been repeatedly addressed by the criminal justice system." This analysis is fully supported by the prior convictions—the crime was serious because it was committed after *his numerous prior convictions*. The third factor—prior prison term—is established by the prison sentences listed as imposed on the prior abstracts of judgment and further confirmed by the movement details while in prison. The fourth factor—committed while on parole—is also established by the movement

7

details, showing he was paroled a mere 15 months prior to committing the current offense; defendant also admitted at sentencing that the crime was committed while he was on parole. And finally, the fifth factor—prior performance on parole or probation— was supported by the 2005 and 2007 abstracts of judgment noting concurrent sentencing for parole violations.

In short, even under the amended section 1170 after Senate Bill 567, the trial court's reasons given for the upper term are still valid because they are supported by the prior convictions contained in the certified record of conviction.

As defendant points out, he does, however, have a criminal history extending beyond those convictions established by the certified records. The probation report listed felony convictions for "attempted robbery" and "drug violation," along with 15 misdemeanor convictions between 1989 and 2013. There is no evidence the trial court relied on any of these convictions as its statements at sentencing indicated it focused primarily on defendant's domestic violence convictions, saying twice defendant is a risk "particularly to domestic partners." Defendant has at least four convictions for domestic violence: three felonies (§ 273.5, subd. (a) in 2007; § 273.5, subd. (a) in 2015; and the current conviction under § 273.5, subd. (a)) and one misdemeanor (§ 243, subd. (e)). The misdemeanor was the only domestic violence conviction not supported by a certified record of conviction and it is unlikely the trial court would have given this one misdemeanor much weight compared the to three felonies.

But even if the trial court did rely on convictions outside of the certified record, any error would be harmless. Preliminarily we conclude that the imposition of the aggravated upper term does not violate defendant's right under the Sixth Amendment to the United States Constitution to have " 'any fact that exposes a defendant to a greater potential sentence . . . found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 835.) In this case, the fact of defendant's prior convictions, as relied on

8

by the trial court in imposing the upper term sentence, were submitted to the court after defendant waived his right to a jury trial and were subsequently proven beyond a reasonable doubt in a court trial. Accordingly, we have no constitutional concerns with defendant's upper term sentence. (See *People v. Black* (2007) 41 Cal.4th 799, 812 ["as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466] and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial"].)

Therefore, because the potential error by the trial court in relying on prior convictions not proven by the certified documents introduced as evidence in the court trial would be a violation of state statute, we find the harmless error test in *People v. Watson* (1956) 46 Cal.2d 818, applies. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) That test is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836; see also Cal. Const., art. VI, § 13.) As applied here, this requires a two-step analysis. First, we start by asking whether there is a reasonable probability that the facts underlying the improperly determined aggravating circumstances would have been established in a statutorily permissible manner, most notably, found true beyond a reasonable doubt if submitted to a jury, or court in a court trial. (*Watson*, at p. 836; § 1170, subd. (b)(2).) Then, excluding any factors we cannot conclude would have been found true in a permissible manner, we examine the entire cause to see whether it is reasonably probable that the trial court would have imposed a more favorable result, i.e., a more lenient sentence. (See *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would

9

have chosen a lesser sentence had it known that some of its reasons were improper"], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.)

As to the first step of the analysis, there is little doubt these convictions occurred and could have been established in a statutorily permissible manner. When the court imposed the sentence, defendant challenged the number of misdemeanor assaults listed in the probation report. But he was concerned the court had the impression there were nine separate assaultive events, when they derived from six or seven cases, not the actual number of convictions. The trial court confirmed it understood this concern. This was further resolved by the prosecutor's statements tallying the assaults on the record. Defendant did not challenge this summation nor did defendant challenge any of the other convictions listed in the probation report even though he showed the ability and proclivity to challenge such information. Defendant's prior convictions are also readily available from official records. (*People v. Towne* (2008) 44 Cal.4th 63, 81.) Because the existence of these additional prior convictions is easily verifiable, and defendant eventually acquiesced to the probation report's accuracy, it is not likely these convictions, if relied on by the trial court, do not exist as reported and could easily be proven beyond a reasonable doubt.

As to the second step in our analysis, whether there would be a reasonable probability the trial court would have imposed a result more favorable to defendant if it had not relied on prior convictions that were not proven in accordance with the newly amended statute, we believe the answer is a resounding, no. Here the trial court explicitly stated that its selection of the upper term sentence was rooted in defendant's prior assaultive conduct, specifically his history of abusing his domestic partners. The trial judge's comments during the sentencing hearing bear repeating: "The reality is that you have been a repeat, chronic and consistent violent offender over and over and over again. [¶] It is true that the current conviction pertains to injuries that were not as severe, but, as

10

you're aware, most people go through life without ever assaulting anybody, without ever committing domestic violence, and you have continued to commit that offense despite efforts by the criminal justice system to dissuade you, both on probationary terms and supervised county prison commitments and releases. [¶] . . . you have demonstrated repeatedly that you're somebody who functions well in an institutional setting and very, very poorly and at great risk to other people, particularly domestic partners, when you're on the outside.

"And so I am going to impose the upper term in that virtually every factor of Rule of Court 4.421(b) is in place here: Lots of prior convictions, increasing seriousness, on a trajectory that is lessened only by the current offense, because the last time you were committed to state prison was much worse, but the crime, in a sense, is every bit as serious in that it was committed -- it was a serious crime in and of itself, but it was committed after, after, after you had been repeatedly addressed by the criminal justice system, most recently for a very serious and violent offense before the current one.

"You were on parole at the time of the commission of this offense, and you failed to profit in any way in terms of your own development and improvement and the opportunity to take advantage of the early release and put yourself right back into the criminal justice system and now right back into prison. [¶] . . . You are a danger and threat to other people, particularly to domestic partners."

It does not appear that the trial court relied on the prior convictions that were outside the record, the majority of which were misdemeanors and only one of which might have been related to domestic violence (§ 243, subd. (e)). Even if it had, on this record we conclude it is not reasonably probable that the trial court would have imposed a sentence more favorable to defendant if it were prohibited from considering such prior convictions.

Accordingly, remand for resentencing is unnecessary on this issue.

11

## II

### *Military PTSD*

Defendant also argues that the trial court abused its discretion by not considering during sentencing his PTSD caused by his military service. We again find any error harmless.

Section 1170.91 provides, in part, that: "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from . . . post-traumatic stress disorder . . . as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170." (§ 1170.91, subd. (a).) This provision "unambiguously *obligate*[*s*] a sentencing court to consider a defendant's service-related PTSD . . . in making discretionary sentencing choices." (*People v. Panozo* (2021) 59 Cal.App.5th 825, 836.)

Without deciding whether defendant's single statement in the probation report is sufficient to trigger the trial court's obligation under section 1170.91, we find any error here harmless. Section 1170.91 does not require courts to impose a certain term, but instead requires trial courts to consider a mitigating factor in making their *discretionary* sentencing choices. Thus, we again apply the *Watson* standard here, as it would be an error of state law, and ask whether there is a reasonable probability the trial court would have given defendant a lower term had it considered defendant's PTSD. (*People v. King* (2020) 52 Cal.App.5th 783, 790 [applying *Watson* standard for analyzing a § 1170.91 error].)

Defendant presented no evidence to support the passing reference to his PTSD. What he did say was that he was diagnosed almost 30 years before the sentencing hearing and never addressed it through counseling or medication. Defendant did not mention this at the sentencing hearing, nor did he offer any evidence that he *currently* was suffering from PTSD. Although the trial court had this information at the time of the sentencing

hearing, it clearly did not find it sufficient to mitigate the aggravating factors. Again, given the strength of the trial court's comments at the sentencing hearing, we conclude there is no reasonable probability defendant would have received a lower term had the trial court understood it was required to determine whether defendant was suffering from PTSD as a result of military service, and if so, obligated to consider it a mitigating factor.

III

*Strike Findings*

Defendant further contends the trial court erred in finding two of his prior convictions qualified as strikes because the court relied on ambiguous abstracts of judgment: (1) the section 245, subdivision (a)(1) conviction from August 2000, and (2) the section 243, subdivision (d) conviction from February 2015. The People agree insufficient evidence supported a finding these convictions were strikes, but contend any error was harmless because they had no effect on defendant's sentence. We agree with the People.

A prior conviction for a violent or serious felony, also known as a strike, requires a sentence for a subsequent felony conviction to be automatically doubled. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1); *People v. Delgado* (2008) 43 Cal.4th 1059, 1065.) A violent felony is any felony listed in section 1192.7, subdivision (c) whereas a serious felony is any felony listed in section 667.5, subdivision (c). (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) It is the prosecution's burden to "prove each element of an alleged sentence enhancement beyond reasonable doubt." (*Delgado*, at p. 1065.) "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence." (*Id.* at p. 1067.)

We agree with the parties the record of conviction provided to the trial court does not necessarily establish two of the convictions as being serious or violent. The abstract for defendant's 2000 conviction states the crime as "Assault w/Deadly Weapon or Force" and the section citation as section "245(A)(1)." Under the version of section 245 in effect

13

when defendant was convicted in 2000, subdivision (a)(1) could be violated by both an assault with a deadly weapon and by force likely to produce great bodily injury. (Former § 245, subd. (a)(1).) "[A]ssault with a deadly weapon" under section 245 is a serious felony. (§ 1192.7, subd. (c)(31).) So is "any felony in which the defendant personally inflicts great bodily injury on any person." (§ 1192.7, subd. (c)(8).) But "assault merely by *means likely to produce* [great bodily injury], without the additional element of personal infliction, is not included in the list of serious felonies." (*People v. Delgado, supra*, 43 Cal.4th at p. 1065.) Because the abstract lists the section number and name of a crime that can be committed in two ways, one serious and the other not statutorily defined as serious, the abstract of judgment is insufficient evidence to determine beyond a reasonable doubt whether defendant's 2000 conviction is a serious crime.

Similarly, the abstract of judgment for defendant's 2015 convictions stated a conviction for "Battery w/Serious B. Injury" under section "243(d)." This section is violated when "a battery is committed against any person and serious bodily injury is inflicted on the person." (§ 243, subd. (d).) But this provision does not require the defendant to have personally inflicted the great bodily injury, a requirement to constitute a serious felony. As defendant points out, given the information supplied by the abstract of judgment, it is possible he was convicted of this crime as an aider and abettor, not as someone who personally inflicted the great bodily injury. In this case, the crime would not be a statutorily defined serious crime. (*People v. Taylor* (2004) 118 Cal.App.4th 11, 29 ["Taylor never admitted having personally inflicted great bodily injury so as to render any of the charged offenses a serious felony"].) Therefore, the trial court's finding as to this conviction also lacked substantial evidence.

But the third conviction was properly found as a strike. The 2015 abstract of judgment states defendant was convicted of "Assault w/Deadly Weapon" under section "245(a)," and the box for serious felony was marked. Defendant does not challenge the validity of the strike finding for this conviction. The trial court relied only on one prior

14

strike to double defendant's current sentence, rendering the other two unnecessary for this purpose. Thus, it is indisputable that the trial court properly doubled defendant's sentence based on one prior serious felony conviction, and defendant does not contend otherwise.

Defendant instead contends these errors are prejudicial and that they violated his right to a jury trial and due process because the trial court "went beyond the evidence" to use these strikes to impose the upper term. This, he argues, necessitates a prejudice review under the heightened standard of *Chapman v. California* (1967) 386 U.S. 18. This standard applies when there is a federal constitutional violation, such as when a fact that exposes a defendant to a greater potential sentence is not found true beyond a reasonable doubt. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110-1111.) But the trial court did not rely on facts not found true beyond a reasonable doubt, or commit any other potential constitutional error, because it is undisputed those two convictions occurred and could be considered for imposing an upper term. Instead, the trial court may have considered these two convictions as serious felonies to impose an upper term when they may not have been statutorily defined serious felonies. This is an issue of statutory error so we again apply the *Watson* standard, asking here whether there is a reasonable probability the trial court would have sentenced defendant to a lower term had it known two of defendant's convictions were not statutorily defined as serious felonies. (*Id*. at p. 1112 [once a reviewing court determines what aggravating factors the trial court could consider, it must then "consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts"].)

We again find no reasonable likelihood of a lesser sentence. Even if those two convictions were not technically serious felony convictions, they were still convictions for, at a minimum, assault likely to produce great bodily injury and for abetting a battery resulting in great bodily injury. These are still felonies and serious in the practical sense,

15

if not in the statutorily defined sense.[3]  For similar reasons analyzed throughout this opinion, nothing in the trial court's analysis of defendant's prior convictions indicate any likelihood that its decision would have changed if two of those felony convictions were not statutorily defined as serious felonies, given its reliance on the number of defendant's prior convictions, especially those for domestic violence.  Despite these potential errors, defendant still has seven total felony convictions, 15 misdemeanor convictions, committed the current crime while on parole, and had a history of parole violations.  We therefore find the lack of substantial evidence for determining defendant had more than one prior serious felony was harmless.

IV

*Cumulative Error*

Finally, defendant argues cumulative prejudice in sentencing, stating even if we find "the erroneous 'true' findings as to [defendant's] prior convictions were otherwise harmless . . . the cumulative prejudice must be considered in combination with the failure to consider [defendant's] military service and post-traumatic stress disorder."

We have found each of these issues would not be prejudicial given the trial court's reliance on defendant's overwhelming criminal record, based on uncontroverted and either certified or verifiable records.  None of the fundamentals underlying the trial court's reasoning for selecting the upper term would be meaningfully undermined by these errors.  The relative minor influences these issues could have individually on sentencing therefore do not create prejudice when collectively considered. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1038 ["Such error as did occur, viewed

---

[3] Insufficient evidence supporting the trial court's findings on those two convictions does not mean defendant's prior convictions were not for statutorily defined serious felony convictions.  It is entirely possible defendant was convicted previously of three serious felonies.  But for the purposes of this prejudice analysis, we assume that these two convictions would not have met the statutory definition of a serious felony.

cumulatively, 'did not significantly influence the fairness of defendant's trial or detrimentally affect the jury's determination of the appropriate penalty' "].)

DISPOSITION

The judgment is affirmed.


_____/s/_____<br>EARL, J.


We concur:


_____/s/_____
MAURO, Acting P. J.


_____/s/_____
KRAUSE, J.